# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

_____

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LINDA MARIE CARTER | ) | Case No. 18-10427-BFK |
| | ) | Chapter 7 |
| | ) | |
| Debtor | ) | |

_____)

## TRUSTEE'S MOTION TO APPROVE
## THE SALE OF REAL PROPERTY LOCATED AT
## 43336 VESTALS PLACE, LEESBURG, VIRGINIA 20176,
## <ins>FREE AND CLEAR OF LIENS, AS A SHORT SALE</ins>

Janet M. Meiburger, the Chapter 7 Trustee in the above-named case, by her undersigned counsel, hereby moves, pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 6004, and Local Rules 6004-1 and 6004-2, for authority to sell the real property located at 43336 Vestals Place, Leesburg, Virginia 20176 (the "Property"), free and clear of liens, as a short sale, with a Bankruptcy Code § 506(c) fee to the bankruptcy estate of $22,500.00; to pay the mortgages in a reduced amount; and to pay the real estate taxes, the real estate commissions, special counsel's fee and the HOA dues, as described herein, and in support of this Motion states as follows:

1.  On February 6, 2018 (the "Petition Date"), the Debtor filed her voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Janet M. Meiburger is the duly qualified and acting Chapter 7 Trustee in this case.

2.  Included in the bankruptcy estate is the Debtor's interest in the real property located at 43336 Vestals Place, Leesburg, Virginia 20176 (the "Property"). The Property is co-owned with the Debtor's former husband, Ronald B. Carter. The Trustee has obtained

_____

Janet M. Meiburger, VA Bar No. 31842
The Meiburger Law Firm, P.C.
1493 Chain Bridge Road, Suite 201
McLean, VA 22101
(703) 556-7871
Counsel for Chapter 7 Trustee

authorization from the Court to sell the Property free of the interest of Mr. Carter, as co-owner, pursuant to 11 U.S.C. §363(h), subject to his rights under 11 U.S.C. §363(i).

3.      The Trustee filed an application to employ Helaine Newman of the firm Weichert Realtors as the exclusive listing agent for the short sale of the Property on July 13, 2018 (Docket No. 48). An order was entered on July 20, 2018, approving the application (Docket No. 53). On November 8, 2018, Ms. Newman changed firms from Weichert Realtors to Berkshire Hathaway Home Services-PenFed Realty, and the Trustee filed an application to employ Ms. Newman of the firm Berkshire Hathaway Home Services-PenFed Realty instead of Weichert Realtors (Docket No. 65). On November 28, 2018, this Court entered an order approving this employment application (Docket No. 66).

4.      On July 20, 2018, the Court entered an order approving the employment of Adams, Morris & Sessing as special counsel to negotiate the short sale (Docket No. 52).

5.      The Property initially was listed for sale for $1,100,000.00. However, there was little interest in the Property at this price. Therefore, the Trustee lowered the asking price to $950,000.00.

6.      The contract for which the Trustee seeks approval is for $875,000.00. A copy of the contract is attached as Exhibit A (the "Contract").  The Contract is for the sale of the Property "as-is".  The buyer is Adam S. Brunson (the "Buyer"). In addition to the purchase price, the Buyer has agreed to pay $5,000.00 toward the $22,500.00 Bankruptcy Code §506(c) fee to the bankruptcy estate, $7,633.66 toward the fees of special counsel, and $835.00 towards the HOA fees. To the best of the Trustee's knowledge, the Buyer does not have any relation to the Debtor, the selling agent Helaine Newman, or the Trustee.  The Buyer has paid a deposit in the amount of $9,000.00. The Contract provides that closing shall take place within sixty (60) days after third party approval of the Contract. The Contract is not subject to any contingencies.

7.      The Buyer's agent is David Poole of Berkshire Hathaway Home Services-PenFed

Realty. Mr. Poole works in a different office from Ms. Newman and works under a different

broker.

8.      The Trustee obtained a title abstract for the Property which shows two mortgage

liens on the Property, the first and second mortgages. The first mortgage is being serviced by

Shellpoint Mortgage, acting on behalf of The Bank of New York Mellon F/K/A The Bank of

New York as Trustee for the Certificate Holders of CWMBS, Inc., CHL Mortgage Pass-Through

Trust 2005-HYB2, Mortgage Pass-Through Certificates, Series 2005-HY ("Shellpoint"). The

second mortgage is held by Bank of America.

9.      As result of the efforts of special counsel, Shellpoint and Bank of America have

approved a short sale of the Property on the terms set forth in the approval letters that are

attached as Exhibit B (Shellpoint) and Exhibit C (Bank of America). Under the approval letters,

Shellpoint will accept $785,237.49 as payment in full for its mortgage, as to which the amount

due is approximately $1,040,568.81, and Bank of America will accept $8,500.00 as payment in

full for its mortgage, as to which the amount due is approximately $247,995.20.

10.      In addition to the first and second mortgages, Lansdowne on the Potomac

Homeowners Association, Inc. (the "HOA") holds a judgment lien on the Property, and has filed

a secured claim for $8,435.82 (Claim No. 2). In addition, post-petition HOA fees have not been

paid.  The HOA has agreed to accept $6,000.00 as payment in full of its claims. A copy of this

approval is attached as Exhibit D.  However, the short sale lenders would only approve a

payment of $3,500.00 to the HOA.  $835.00 of the $2,500.00 difference can be provided for

from the real estate tax payment, which should be less than the lenders allowed.  In addition, the

realtors have agree to reduce their commission by $1,282.00 and special counsel has agreed to

reduce its fee by $383.00.

11.    Pursuant to the terms of the agreement with Shellpoint and Bank of America, the Buyer has agreed to pay $7,633.66 toward the fees of special counsel and Shellpoint has agreed to pay an additional $1,500.00, to be shown as a seller expense on the settlement statement, for a total payment to special counsel of $9,133.66, subject to the $383.00 reduction described above, for a net payment of $8,750.66.  The $1,500.00 payment by Shellpoint does not affect the amount of the Section 506(c) fee that is being paid by the Buyer to the bankruptcy estate. Simultaneously herewith, the Trustee is filing an application for approval of special counsel's fee.

12.    By this Motion, the Trustee requests that the Court approve the payment, at closing, of the mortgage, as described herein, real estate commissions, the real estate taxes and the costs of sale, such as title costs, homeowner association dues, special counsel fee and real estate tax pro rations, as approved by Bayview.

13.    The economic effect of this transaction is as follows:

| | |
|---|---:|
| Sale Price | $875,000.00 |
| Plus: Additional Payment by Buyer for 506(c) fee | $5,000.00 |
| Plus: Additional Payment by Buyer for Special Counsel Fee | $7,633.66 |
| Reduced Shellpoint Mortgage Payment | ($785,237.49) |
| Reduced Bank of America Payment | ($8,500.00) |
| HOA Payment | ($6,000.00) |
| Real Estate Commissions Minus Agreed Upon Reduction | ($42,468.00) |
| Special Counsel Fee Minus Agreed Upon Reduction | ($8,750.66) |
| Real Estate Taxes | ($3,311.25) |
| Other Costs of Sale | ($10,866.26) |
| Bankruptcy Code §506(c) Fee to the Bankruptcy Estate | ($22,500.00) |

14.     In addition, the title report on the Property shows two federal tax liens recorded against the Property. These liens are totally undersecured, and special counsel has submitted an application for certificate of discharge of property from federal tax liens (IRS Form 14135), which is expected to be granted. Therefore, the Trustee requests that the sale be free and clear of these liens.

15.      Bank of America, National Association holds a judgment lien against the Debtor in the amount of $16,798.93.   Since the Property is owned as tenants by the entireties, and the judgment is only against the Debtor, the judgment does not encumber the Property. Nevertheless, in order to make clear that clear title is being conveyed, the Trustee requests approval to sell the Property free and clear of this lien also, pursuant to 11 U.S.C. § 363(f)(1).

16.     Trustee believes that there will be no federal and state income taxes owed with respect to the sale because the Property qualifies for the principal residence exclusion.

17.     The Debtor claimed an exemption in the Property on Schedule C in the amount of $10.00. However, the Debtor did not file a homestead deed. Therefore, no exemption is payable to the Debtor.

18.     The Trustee believes that the proposed sale is in the best interests of the bankruptcy estate because it is an arm's length sale to an unrelated buyer and therefore reflects the market value of the Property and because it will generate funds with which to pay unsecured creditors.

19.     The Trustee requests, pursuant to 11 U.S.C. §363(m) and Federal Rule of Bankruptcy Procedure 6004(h), that entry of this Order shall not be stayed for fourteen (14) days after entry, as would otherwise be required by Bankruptcy Rule 6004(h), and notwithstanding any provision of the Bankruptcy Code or Bankruptcy Rules to the contrary, including but not

limited to Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry.

WHEREFORE, the Trustee respectfully requests that the Court enter an order authorizing the sale of the Debtor's real property located at 43336 Vestals Place, Leesburg, Virginia, 20176 free and clear of liens, as a short sale, with a Bankruptcy Code §506(c) fee to the bankruptcy estate of $22,500.00; authorizing payment at closing of the mortgages, as described herein, the real estate taxes, the real estate commissions, the homeowner association dues, special counsel's fee and the other expenses as approved by Shellpoint and Bank of America; and granting such other and further relief as the Court deems appropriate.

Respectfully submitted,

THE MEIBURGER LAW FIRM, P.C.

Dated: March 1, 2019        By: /s/ Janet M. Meiburger
                            Janet M. Meiburger, Esq., VSB No. 31842
                            The Meiburger Law Firm, P.C.
                            1493 Chain Bridge Road, Suite 201
                            McLean, Virginia 22101
                            (703) 556-7871

                            Counsel to Chapter 7 Trustee

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on this 1st day of March, 2019, a true and correct copy of the

foregoing Trustee's Motion to Approve the Sale of Real Property Located at 43336 Vestals

Place, Leesburg, Virginia, 20176, Free and Clear of Liens, as a Short Sale, will be served by

ECF e-mail pursuant to the applicable Standing Order of the Court, and by first class mail,

postage prepaid on the following:

> Adam Brunson
> 44136 Riverpoint Drive
> Leesburg, VA 20176
>
> Attorney General of the United States
> U.S. Department of Justice
> 950 Pennsylvania Ave., N.W.
> Washington, D.C. 20530-0001
>
> Civil Process Clerk
> Justin W. Williams United States Attorney Building
> 2100 Jamieson Avenue
> Alexandria, VA 22314
>
> Internal Revenue Service
> 1111 Constitution Ave., N.W.
> Washington, D.C. 20224

and by certified mail to:

> Brian T. Moynihan
> President and Chief Executive Officer
> Bank of America, National Association
> 100 North Tryon Street Ste 220
> Charlotte, NC 28202-4031

and by email to:

> Helaine Newman
> Berkshire Hathaway Home Services-PenFed Realty
> *helainesells@gmail.com*
>
> Michelle Adams, Esq.
> Adams, Morris & Sessing
> *michelle@amslawgroup.com*

David Poole
Berkshire Hathaway Home Services-PenFed Realty
*astuterealtor@gmail.com*

/s/ Janet M. Meiburger
Janet M. Meiburger

J:\Trustee\Carter, Linda Marie (18-10427)\Pleadings\Sale of Property.Brunson.Short Sale.Motion.1.doc

# EXHIBIT A

*For Linda Marie Carter*

**BERKSHIRE HATHAWAY**
*HomeServices*
*Penfed Realty*

## RESIDENTIAL SALES CONTRACT (Virginia)

*#18-10427*   *JMM*

This sales contract ("Contract") is offered on ___**October 29, 2018**___ ("Date of Offer") between
~~Adam S. Brunson~~

~~Ronald B. Carter, Linda M. Carter~~ *Janet M. Meiburger,* *for Linda* ("Buyer") and *Bankruptcy Trustee* ("Seller") who, among other things, hereby confirm and acknowledge by their initials and signatures herein that by prior disclosure in this real estate transaction *BHHS Penfed* ~~Weichert, REALTORS~~ *Realty* ("Listing Brokerage") represents Seller, and ___**BHHS Penfed Realty**___ ("Cooperating Brokerage") represents [X] Buyer OR ☐ Seller. The Listing Brokerage and Cooperating Brokerage are collectively referred to as "Broker." (If the brokerage firm is acting as a dual representative for both Seller and Buyer, then the appropriate disclosure form is attached to and made a part of this Contract.) In consideration of the mutual promises and covenants set forth below, and other good and valuable consideration the receipt and sufficiency of which are acknowledged, the parties agree as follows:

**1. REAL PROPERTY** Buyer will buy and Seller will sell for the sales price ("Sales Price"), Seller's entire interest in the real property (with all improvements, rights and appurtenances) described as follows ("Property"):
TAX Map/ID # __112288698000__   Legal Description: Lot(s) __22__   Section __24A__
Subdivision or Condominium __Lansdowne on The Potomac__
Parking Space(s) # _____ County/Municipality __Loudoun__
Deed Book/Liber # _____ Page/Folio # _____
Street Address __43336 Vestals Pl__
Unit # _____ City __Leesburg__   Zip Code __20176-8418__

**2. PRICE AND SPECIFIED FINANCING** Any % are percentages of Sales Price

**A. Down Payment**   $ _____ or % __20.000__

**B. Financing**

1. First Trust (if applicable)   $ _____ or % __80.000__

2. Second Trust (if applicable)   $ _____ or % _____

3. Seller Held Trust   $ _____ or % _____   *JMM*
   Addendum attached (if applicable)

TOTAL FINANCING   $ _____ or % __80.000__

SALES PRICE   $ ~~860,000.00~~ *875,000*

**C. First Deed of Trust** Buyer will [X] Obtain OR ☐ Assume a [X] Fixed OR an ☐ Adjustable rate First Deed of Trust loan amortized over __30__ years. The interest rate for this loan is at an (initial) interest rate not to exceed __5.000__ % per year of the following type:
[X] Conventional See Addendum Attached   ☐ VA See Addendum Attached
☐ FHA See Addendum Attached   ☐ USDA See Addendum Attached
☐ Other: _____   ☐ This contract is not contingent on Financing.

**D. Second Deed of Trust** Buyer will ☐ Obtain OR ☐ Assume a ☐ Fixed OR an ☐ Adjustable rate Second Deed of Trust loan amortized over _____ years. The interest rate for this loan is at an (initial) interest rate not to exceed _____ % per year.

**E.** Assumption Only Assumption fee, if any, and all charges related to the assumption will be paid by the Buyer. If Buyer assumes Seller's loan(s): (i) Buyer and Seller ☐ will OR ☐ will not obtain a release of Seller's liability to the U.S. Government for the repayment of the loan by Settlement, (ii) Buyer and Seller ☐ will OR ☐ will not obtain substitution of Seller's VA entitlement by Settlement. Balances of any assumed loans, secondary financing and cash down payments are approximate.

3. **DEPOSIT** Buyer's deposit ("Deposit") in the amount of ☒ $ 9,000.00 _____ check and/or
☐ $ _____ by note due and payable on _____ shall be held by
_____ RL Title & Escrow _____ ("Escrow Agent"). Buyer ☐ has delivered
Deposit to Escrow Agent OR ☒ will deliver the Deposit to Escrow Agent by ___5___ days after Date of Ratification.

If the Escrow Agent is a Virginia Real Estate Board ("VREB") licensee, the parties direct the Escrow Agent to place the Deposit in an escrow account by the end of the fifth business banking day following receipt or following the Date of Ratification, whichever is later. If the Escrow Agent is not a VREB licensee, Deposit will be placed in an escrow account of Escrow Agent after Date of Ratification in conformance with the laws and regulations of Virginia and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from Deposit. Deposit will be held in escrow until: (i) credited toward the Sales Price at Settlement; (ii) all parties have agreed in writing as to its disposition; (iii) a court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) disposed of in any other manner authorized by law. Seller and Buyer agree that Escrow Agent will have no liability to any party on account of disbursement of Deposit or on account of failure to disburse Deposit, except in the event of Escrow Agent's gross negligence or willful misconduct.

4. **SETTLEMENT** Seller and Buyer will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before. ~~January 14, 2019~~ *within 60 days after third party approval ASB* ("Settlement Date") except as otherwise provided in this Contract. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior business day.
**NOTICE TO BUYER REGARDING THE REAL ESTATE SETTLEMENT AGENTS ACT** ("RESAA") Choice of Settlement Agent: You have the right to select a Settlement agent to handle the closing of this transaction. The Settlement agent's role in closing your transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, your lender will instruct the Settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No Settlement agent can provide legal advice to any party to the transaction except a Settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.
Variation by agreement: The provisions of the Real Estate Settlement Agents Act may not be varied by agreement, and rights conferred by this chapter may not be waived. The Seller may not require the use of a particular settlement agent as a condition of the sale of the property.
Escrow, closing and Settlement service guidelines: The Virginia State Bar issues guidelines to help Settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, Settlement or closing services. As a party to a real estate transaction, you are entitled to receive a copy of these guidelines from your Settlement agent, upon request, in accordance with the provisions of the Real Estate Settlement Agents Act.

Seller _JWM_   Buyer _ASB_

Buyer designates _____ RL Title & Escrow _____ ("Settlement Agent"). Buyer to contact Settlement Agent within 10 Days of Date of Ratification to schedule Settlement. Settlement Agent shall order the title exam and survey if required.

To facilitate Settlement Agent's preparation of various closing documents, including any Closing Disclosure, Buyer hereby authorizes Settlement Agent to send such Closing Disclosure to Buyer by electronic means and agrees to provide Settlement Agent Buyer's electronic mail address for that purpose only.

5.  **DOWN PAYMENT** The balance of the down payment will be paid on or before Settlement Date by certified or cashier's check or by bank-wired funds as required by Settlement Agent. An assignment of funds shall not be used without prior written consent of Seller.

6.  **DELIVERY** This Paragraph specifies the general delivery requirements under this Contract. For delivery of property or condominium owner's association documents see the VIRGINIA PROPERTY OWNERS' ASSOCIATION ACT and/or VIRGINIA CONDOMINIUM ACT Paragraphs of this Contract. Delivery of the Notice pursuant to the Virginia Residential Property Disclosure Act is addressed in the VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT paragraph.

    Delivery ("Delivery", "delivery", or "delivered") methods may include hand-carried, sent by professional courier service, by United States mail, by facsimile, or email transmission. The parties agree that Delivery will be deemed to have occurred on the day: delivered by hand, delivered by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested, or sent by facsimile or email transmission, either of which produces a tangible record of the transmission.

    Deliveries will be sent as follows:
    A.  Addressed to Seller at the Property address unless otherwise specified below by ☐ United States mail, hand delivery or courier service OR ☐ fax OR ☒ email (check all that apply):
    To Seller: C/O agent at helainesells@gmail.com

    B.  Addressed to Buyer by ☐ United States mail, hand delivery or courier service OR ☐ fax OR ☒ email (check all that apply):
    To Buyer: C/O agent @ astuterealtor@gmail.com

    No party to this Contract shall refuse Delivery in order to delay or extend any deadline established in this Contract.

    *Property is Exempt*

7.  **VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT** The Virginia Residential Property Disclosure Act requires Seller to deliver a disclosure statement prior to the acceptance of this Contract unless the transfer of Property is exempt. The law requires Seller, on a disclosure statement provided by the Real Estate Board, to state that Seller makes no representations or warranties concerning the physical condition of Property and to sell Property "as is", except as otherwise provided in this Contract.

Seller ____    Buyer ____

McGee Purchase

If the disclosure statement is delivered to Buyer after Date of Ratification, Buyer's sole remedy shall be to terminate this Contract at or prior to the earliest of (i) 3 days after delivery of the disclosure statement in person; (ii) 5 days after the postmark if the disclosure statement is sent by United States mail, postage prepaid, and properly addressed to Buyer; (iii) settlement upon purchase of Property; (iv) occupancy of Property by Buyer; (v) Buyer making written application to a lender for a mortgage loan where such application contains a disclosure that the right of termination shall end upon the application for the mortgage loan; or (vi) the execution by Buyer after receiving the disclosure statement of a written waiver of Buyer's right of termination separate from this Contract.

Written Notice of termination may be (i) hand delivered; (ii) sent by United States mail, postage prepaid, provided that Buyer retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service confirming that such mailing was prepared by Buyer; (iii) sent by electronic means to the facsimile number or electronic mailing address provided by Seller in the DELIVERY paragraph, provided that Buyer retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service; (iv) overnight delivery using a commercial service or the United States Postal Service.

Any such termination shall be without penalty to Buyer, and any deposit shall be promptly returned to Buyer.

8. **VIRGINIA PROPERTY OWNERS' ASSOCIATION ACT** Seller represents that Property ☒ is OR ☐ is not located within a development that is subject to the Virginia Property Owners' Association Act ("POA Act" or "Act" solely in this Paragraph). Section 55-509.4(A) requires the following contract language:

> Subject to the provisions of subsection A of § 55-509.10, a person selling a lot shall disclose in the contract that (i) the lot is located within a development that is subject to the Virginia Property Owners' Association Act (§ 55-508 et seq.); (ii) the Act requires the seller to obtain from the property owners' association an association disclosure packet and provide it to the purchaser; (iii) the purchaser may cancel the contract within three days after receiving the association disclosure packet or being notified that the association disclosure packet will not be available; (iv) if the purchaser has received the association disclosure packet, the purchaser has a right to request an update of such disclosure packet in accordance with subsection H of § 55-509.6 or subsection C of § 55-509.7, as appropriate; and (v) the right to receive the association disclosure packet and the right to cancel the contract are waived conclusively if not exercised before settlement.

For delivery of the Packet or the Notice of non-availability of the Packet, Buyer prefers delivery at _____astuterealtor@gmail.com_____ if electronic or _____ if hard copy.

> The Act further provides that for purposes of clause (iii), the association disclosure packet shall be deemed not to be available if (a) a current annual report has not been filed by the association with either the State Corporation Commission pursuant to § 13.1-936 or with the Common Interest Community Board pursuant to § 55-516.1, (b) the seller has made a written request to the association that the packet be provided and no such packet has been received within 14 days in accordance with subsection A of § 55-509.5, or (c) written notice has been provided by the association that a packet is not available.

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                          McGee Purchase

The Act further provides that if the contract does not contain the disclosure required by subsection A of § 55-509.4, the purchaser's sole remedy is to cancel the contract prior to settlement.

The Act further provides that the information contained in the association disclosure packet shall be current as of a date specified on the association disclosure packet prepared in accordance with this section; however, a disclosure packet update or financial update may be requested in accordance with subsection G of § 55-509.6 or subsection C of § 55-509.7, as appropriate. The purchaser may cancel the contract: (i) within three days after the date of the contract, if on or before the date that the purchaser signs the contract, the purchaser receives the association disclosure packet or is notified that the association disclosure packet will not be available; (ii) within three days after receiving the association disclosure packet if the association disclosure packet or notice that the association disclosure packet will not be available is hand delivered, delivered by electronic means, or delivered by a commercial overnight delivery service or the United Parcel Service, and a receipt obtained; or (iii) within six days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to the purchaser by United States mail. The purchaser may also cancel the contract at any time prior to settlement if the purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to the purchaser. Notice of cancellation shall be provided to the lot owner or his agent by one of the following methods: (a) Hand delivery; (b) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (c) Electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (d) Overnight delivery using a commercial service or the United States Postal Service.

The Act further provides that in the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty, and the seller shall cause any deposit to be returned promptly to the purchaser.

The Act further provides that whenever any contract is canceled based on a failure to comply with subsection A or C of § 55-509.4 or pursuant to subsection B of § 55-509.4, any deposit or escrowed funds shall be returned within 30 days of the cancellation, unless the parties to the contract specify in writing a shorter period.

The parties specify that such funds shall immediately be returned pursuant to the VOID CONTRACT paragraph of this Contract.

The Act further provides that any rights of the purchaser to cancel the contract provided by this chapter are waived conclusively if not exercised prior to settlement.

The Act further provides that except as expressly provided in this chapter [of the Act], the provisions of this section and § 55-509.5 may not be varied by agreement, and the rights conferred by this section and § 55-509.5 may not be waived.

**VIRGINIA CONDOMINIUM ACT** Seller represents that the Property ☐ is OR ☒ is not a condominium unit. The Virginia Condominium Act (the "Condominium Act" or "Act" solely in this paragraph), requires the following contract language:

In the event of any resale of a condominium unit by a unit owner other than the declarant, and subject to the provisions of subsection F and § 55-79.87 A, the unit owner shall disclose in the contract that (i) the unit is located within a development which is subject to the Condominium Act, (ii) the Act requires the seller to obtain from the unit owners' association a resale certificate and provide it to the purchaser, (iii) the purchaser may cancel the contract within three days after receiving the resale certificate or being notified that the resale certificate will not be available, (iv) if the purchaser has received the resale certificate, the purchaser has a right to request a resale certificate update or financial update in accordance with § 55-79.97:1, as appropriate, and (v) the right to receive the resale certificate and the right to cancel the contract are waived conclusively if not exercised before settlement.

For delivery of the Certificate, Buyer prefers delivery at _____ _____ if electronic or _____ _____ if hard copy.

The Act further provides that for purposes of clause (iii), the resale certificate shall be deemed not to be available if (a) a current annual report has not been filed by the unit owners' association with either the State Corporation Commission pursuant to § 13.1-936 or the Common Interest Community Board pursuant to § 55-79.93:1, (b) the seller has made a written request to the unit owners' association that the resale certificate be provided and no such resale certificate has been received within 14 days in accordance with subsection C, or (c) written notice has been provided by the unit owners' association that a resale certificate is not available.

The Act further provides that if the contract does not contain the disclosure required by subsection A of § 55-79.97, the purchaser's sole remedy is to cancel the contract prior to settlement.

The Act further provides that the information contained in the resale certificate shall be current as of a date specified on the resale certificate. A resale certificate update or a financial update may be requested as provided in § 55-79.97:1, as appropriate.

The Act further provides that the purchaser may cancel the contract (i) within three days after the date of the contract, if the purchaser receives the resale certificate or is notified that the resale certificate will not be available on or before the date that the purchaser signs the contract; (ii) within three days after receiving the resale certificate or notice that the resale certificate will not be available if the resale certificate is hand delivered, delivered by electronic means, or delivered by a commercial overnight delivery service or the United States Postal Service, and a receipt obtained; or (iii) within six days after the postmark date if the resale certificate or notice that the resale certificate will not be available is sent to the purchaser by United States mail. Notice of cancellation shall be provided to the unit owner or his agent by one of the following methods: (a) Hand delivery; (b) United States mail, postage prepaid, provided the sender retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service prepared by the sender confirming such mailing; (c) Electronic means provided the sender retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service prepared by the sender confirming the electronic delivery; or (d) Overnight delivery using a commercial service or the United States Postal Service.

The Act further provides that in the event of a dispute, the sender shall have the burden to demonstrate delivery of the notice of cancellation. Such cancellation shall be without penalty,

Seller _TMM_    Buyer _____

and the unit owner shall cause any deposit to be returned promptly to the purchaser.
The Act further provides that failure to receive a resale certificate shall not excuse any failure to comply with the provisions of the condominium Instruments, articles of incorporation, or rules or regulations.

10. **PROPERTY MAINTENANCE AND CONDITION** ~~Except as otherwise specified herein~~, Seller will deliver Property ~~free and clear of trash and debris, broom clean and~~ in substantially the same physical condition to be determined as of ☐ Date of Offer OR ☒ Date of home inspection OR ☐ Other:_____ . Seller will have all utilities in service through Settlement or as otherwise agreed. Buyer and Seller will not hold the Broker liable for any breach of this Paragraph.

Buyer acknowledges, subject to Seller acceptance, that this Contract may be contingent upon home inspection(s) and/or other inspections to ascertain the physical condition of Property. If Buyer desires one or more inspection contingencies, such contingencies must be included in an addendum to this Contract.

☒ This Contract is contingent upon home inspection(s) and/or other inspections. (Addendum attached)
**OR**
☐ Buyer waives the opportunity to make this Contract contingent upon home inspection(s).

Buyer acknowledges that except as otherwise specified in this Contract, Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures shall convey in its AS-IS condition as of the date specified above.

11. **ACCESS TO PROPERTY** Seller will provide Broker, Buyer, inspectors representing Buyer, and representatives of lending institutions for Appraisal purposes reasonable access to Property to comply with this Contract. In addition, Buyer and/or Buyer's representative will have the right to make walk-through inspection(s) within seven (7) days prior to Settlement and/or occupancy, unless otherwise agreed to by Buyer and Seller.

12. **UTILITIES WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING**
(Check all that apply)

| | | | | | |
|---|---|---|---|---|---|
| Water Supply: | ☒ Public | ☐ Private Well | | ☐ Community Well | |
| Hot Water: | ☐ Oil | ☒ Gas | ☐ Elec. | ☐ Other | |
| Air Conditioning: | ☐ Oil | ☐ Gas | ☒ Elec. | ☐ Heat Pump ☐ Other _____ | ☒ Zones 3 _____ |
| Heating: | ☐ Oil | ☒ Gas | ☐ Elec. | ☒ Heat Pump ☐ Other _____ | ☒ Zones 3 _____ |

Sewage Disposal: ☒ Public ☐ Septic for # BR ____ ☐ Community Septic ☐ Alternative Septic for # BR: ____
Septic Waiver Disclosure provided by Seller (if applicable) per VA Code § 32.1-164.1:1, State Board of Health septic system waivers are not transferable.

13. **PERSONAL PROPERTY AND FIXTURES** Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, antennas, exterior trees, and shrubs. Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices DO NOT convey; however, all related mounts, brackets and hardware DO convey. If more than one of an item convey, the number of items is noted.

Seller _JMM_    Buyer _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    McGee Purchase

**The items marked YES below are currently in:** _____ offered.

| Yes | No | # | Items | Yes | No | # | Item | Yes | No | # | Items |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ___ | Alarm System | ☐ | ☒ | ___ | Freezer | ☒ | ☐ | ___ | Satellite Dish |
| ☒ | ☐ | 2 | Built-in Microwave | ☐ | ☒ | ___ | Furnace Humidifier | ☐ | ☒ | ___ | Storage Shed |
| ☒ | ☐ | A11 | Ceiling Fan | ☒ | ☐ | 3 | Garage Opener | ☒ | ☐ | ___ | Stove or Range |
| ☐ | ☒ | ___ | Central Vacuum | ☒ | ☐ | 2 | w/ remote | ☐ | ☒ | ___ | Trash Compactor |
| ☒ | ☐ | ___ | Clothes Dryer | ☐ | ☒ | ___ | Gas Log | ☒ | ☐ | ___ | Wall Oven |
| ☒ | ☐ | ___ | Clothes Washer | ☐ | ☒ | ___ | Hot Tub, Equip & Cover | ☐ | ☒ | ___ | Water Treatment System |
| ☐ | ☒ | ___ | Cooktop | ☐ | ☒ | ___ | Intercom | ☐ | ☒ | ___ | Window A/C Unit |
| ☒ | ☐ | 2 | Dishwasher | ☐ | ☒ | ___ | Playground Equipment | ☐ | ☒ | ___ | Window Fan |
| ☒ | ☐ | 1 | Disposer | ☐ | ☒ | ___ | Pool, Equip, & Cover | ☒ | ☐ | ___ | Window Treatments |
| ☐ | ☒ | ___ | Electronic Air Filter | ☒ | ☐ | 3 | Refrigerator | ☐ | ☒ | ___ | Wood Stove |
| ☐ | ☒ | ___ | Fireplace Screen/Door | ☒ | ☐ | 1 | w/ ice maker | | | | |

*JMM AB*

**OTHER** *All Items Convey AS-IS*

**FUEL TANKS** ☐ Fuel Tank(s) Leased # _____    ☐ Fuel Tank(s) Owned (Fuel Tank(s), if owned, convey) # _____ . Unless otherwise agreed to in writing, any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of Buyer. _____

_____

**LEASED ITEMS** Any leased items, systems or service contracts (including, but not limited to, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) DO NOT convey absent an express written agreement by Buyer and Seller. The following is a list of the leased items within the Property: _____

_____

14. **FIRPTA – WITHHOLDING TAXES FOR FOREIGN SELLER** Seller is a US citizen or a Lawful Permanent Resident as defined by the Immigration and Nationality Act (Green Card Holder). ☒ Yes OR ☐ No. (If No, FIRPTA Addendum Attached)

15. **FINANCING APPLICATION** If this Contract is contingent on financing, Buyer will make written application for the Specified Financing and any lender required property insurance no later than seven (7) days after Date of Ratification. Buyer grants permission for Cooperating Brokerage and the lender to disclose to Listing Brokerage and Seller general information available about the progress of the loan application and loan approval process. If Buyer fails to settle, except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply. Seller agrees to comply with reasonable lender requirements, except as otherwise provided in the LENDER REQUIRED REPAIRS paragraph of the applicable financing contingency addendum.

16. **ALTERNATIVE FINANCING**
Alternative Financing means any change to the financing terms provided in the PRICE AND SPECIFIED FINANCING paragraph, including but not limited to Down Payment amount, financing, including amount financed, loan type (i.e., Conventional, FHA, VA, or Other), term of any loan, interest rate, or loan program (i.e., assumption, fixed or adjustable rate).
Buyer may substitute Alternative Financing for the Specified Financing. If Buyer wishes to retain the protection of a financing contingency, Buyer shall execute a new financing addendum (if applicable) and obtain Seller's written consent. Should Buyer pursue Alternative Financing without Seller's written consent, Buyer shall waive the protection of any financing contingency.

Seller *JMM*    Buyer *AB*

Buyer may substitute an alternative lender for Specified Financing provided: (a) there is no additional expense to Seller; (b) Settlement Date is not delayed; and (c) if Buyer fails to settle, except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply.

17. **BUYER'S REPRESENTATIONS** Buyer ☒ will OR ☐ will not occupy the Property as Buyer's principal residence. Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property. The Cooperating Brokerage ☒ is OR ☐ is not authorized to disclose to Listing Brokerage, Seller, and any lender the appropriate financial or credit information provided to Cooperating Brokerage by Buyer. Buyer acknowledges that Seller is relying upon all of Buyer's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker, or the lender by Buyer.

18. ~~SMOKE DETECTORS Seller shall deliver Property with smoke detectors installed and functioning in accordance with the laws and regulations of Virginia.~~

19. **TARGET LEAD-BASED PAINT HOUSING** Seller represents that any residential dwellings at Property ☐ were OR ☒ were not constructed before 1978. If the dwellings were constructed before 1978, then, unless exempt under 42 U.S.C. 4852d, Property is considered "target housing" under the statute and a copy of the "Sale: Disclosure and Acknowledgment of Information on Lead-Based Paint and/or Lead-Based Paint Hazards" has been attached and made a part of the Contract as required by law. Buyer ☒ does OR ☐ does not waive the right to a risk assessment or inspection of Property for the presence of lead-based paint and/or lead-based paint hazards. If not, a copy of the Sales Contract Addendum for Lead-Based Paint Testing is attached to establish the conditions for a lead-based paint risk assessment or inspections.

20. **WOOD-DESTROYING INSECT INSPECTION** ☐ NONE ☒ Buyer at Buyer's expense OR ☐ Seller at Seller's expense will furnish a written report from a pest control firm dated not more than 90 days prior to Settlement showing that all dwelling(s) and/or garage(s) within Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of live wood-destroying insects, and free from visible damage. ~~Any treatment and repairs for damage identified in the inspection report will be made at Seller's expense and Seller will provide written evidence of such treatment and/or repair prior to date of Settlement which shall satisfy the requirements of this Paragraph.~~

21. **DAMAGE OR LOSS** The risk of damage or loss to Property by fire, act of God, or other casualty remains with Seller until the execution and delivery of the deed of conveyance to Buyer at Settlement.

22. **TITLE** The title report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 business days to obtain the title report and survey after which this Contract, at the option of Seller, may be terminated and the Deposit refunded in full to Buyer according to the terms of the DEPOSIT paragraph. Fee simple title to Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Buyer.

Seller will convey title which is good, marketable, and insurable by a licensed title insurance company with no additional risk premium. ~~In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense.~~ Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any, as of Settlement Date. If title is not good and marketable, and insurable by a licensed title insurance company with no additional risk premium, on Settlement Date, Buyer may at ~~Buyer's option either (a)~~ declare the Contract void in writing, ~~or (b) pursue all available legal and equitable remedies.~~ Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties.

Seller JMM    Buyer

McGee Purchase

Seller will convey Property by ~~general~~ *Special* warranty deed ~~with English covenants of title~~ ("Deed"). The manner of taking title may have significant legal and tax consequences. Buyer is advised to seek the appropriate professional advice concerning the manner of taking title.

Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes Settlement Agent to obtain pay-off or assumption information from any existing lenders. ~~Unless otherwise agreed to~~ in writing, Seller will pay any special assessments and will ~~comply with all orders or notices of violations of any county or local authority, condominium unit owners' association,~~ homeowners' or property owners' association or actions in any ~~court on account thereof, against~~ or affecting Property on Settlement Date. ~~The Broker is hereby expressly released from all liability for damages by reason of any defect in the title.~~ *See additional addendum*

23. **NOTICE OF POSSIBLE FILING OF MECHANICS' LIEN** Code of Virginia Section 43-1 et seq. permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against Property. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 Days from the last day of the month in which the lienor last performed work or furnished materials; or (ii) 90 Days from the time the construction, removal, repair or improvement is terminated. AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

24. **POSSESSION DATE** Unless otherwise agreed to in writing between Seller and Buyer, Seller shall give possession of Property at Settlement, including delivery of keys, key fobs, codes and digital keys, if any. If Seller fails to do so and occupies Property beyond Settlement, Seller will be a tenant at sufferance of Buyer and hereby expressly waives all notice to quit as provided by law. Buyer will have the right to proceed by any legal means available to obtain possession of Property. ~~Seller will pay any damages and costs incurred by Buyer including reasonable attorneys' fees.~~

25. **FEES** Fees for the preparation of the Deed, that portion of Settlement Agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees and any other proper charges assessed to Seller will be paid by Seller. Fees for the title exam (except as otherwise provided), survey, recording (including those for any purchase money trusts) and that portion of Settlement Agent's fee billed to Buyer, Buyer's legal fees and any other proper charges assessed to Buyer will be paid by Buyer. Fees to be charged will be reasonable and customary for the jurisdiction in which Property is located. Grantor's tax and Regional Congestion Relief Fee (for Alexandria City, Arlington, Fairfax, Loudoun and Prince William Counties and all cities contained within) shall be paid by Seller. Buyer shall pay recording charges for the Deed and any purchase money trusts.

*Subject to Court approval*

26. **BROKER'S FEE** Seller ~~irrevocably~~ instructs Settlement Agent to pay Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse the compensation offered by Listing Brokerage to Cooperating Brokerage in writing as of the Date of Offer, and the remaining amount of Broker's compensation to Listing Brokerage.

27. **ADJUSTMENTS** Rents, taxes, water and sewer charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the Date of Settlement. Taxes, general and special, are to be adjusted according to the most recent property tax bill(s) for Property issued prior to Settlement Date,

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          McGee Purchase

except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller or allowance made at Settlement. If a loan is assumed, interest will be adjusted to the Settlement Date and Buyer will reimburse Seller for existing escrow accounts, if any.

## 28. ATTORNEY'S FEES

A. If any Party breaches this Contract and a non-breaching Party retains legal counsel to enforce its rights hereunder, the non-breaching Party shall be entitled to recover against the breaching Party, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Contract, whether or not suit is filed, and in obtaining, enforcing and/or defending any Judgment related thereto. Should any tribunal of competent jurisdiction determine that more than one party to the dispute has breached this Contract, then all such breaching Parties shall bear their own costs, unless the tribunal determines that one or more parties is a "Substantially Prevailing Party", in which case any such Substantially Prevailing Party shall be entitled to recover from any of the breaching parties, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto.

B. In the event a dispute arises resulting in the Broker (as used in this paragraph to include any agent, licensee, or employee of the Broker) being made a party to any litigation by the Buyer or by the Seller, the Parties agree that the Party who brought the Broker into litigation shall indemnify the Broker for all of its reasonable Legal Expenses incurred, unless the litigation results in a judgment against the Broker.

## 29. PERFORMANCE
Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

## 30. DEFAULT
If Buyer fails to complete Settlement for any reason other than Default by Seller, Buyer shall be in Default and, at the option of Seller, the Deposit may be forfeited to Seller as liquidated damages and not as a penalty. In such event, Buyer shall be relieved from further liability to Seller. If Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of Buyer's liability in the event of a Default. Buyer and Seller knowingly, freely and voluntarily waive any defense as to the validity of liquidated damages under this Contract, including Seller's option to elect liquidated damages or pursue actual damages, or that such liquidated damages are void as penalties or are not reasonably related to actual damages.

If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between Seller and Buyer, the Broker may accept, and Seller agrees to pay, the Broker one-half of the Deposit in lieu of Broker's Fee (provided Broker's share ~~of any forfeited Deposit will not exceed the~~ amount due under the listing agreement) ~~~~ subject to court approval

If Seller fails to perform or comply with any of the terms and conditions of this Contract or fails to complete Settlement for any reason other than Default by Buyer, Seller shall be in Default and Buyer will have the right to pursue all ~~legal or equitable remedies, including~~ specific performance ~~and/or damages.~~

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                McGee Purchase

Seller _____    Buyer _____

~~If either Seller or Buyer refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation.~~ Seller and Buyer agree that no Escrow Agent will have any liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except only in the event of Escrow Agent's gross negligence or willful misconduct. The parties further agree that Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed, ~~and that Seller and Buyer each will indemnify, defend and save harmless Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct.~~

If either Buyer or Seller is in Default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, Appraisal, survey and the Broker's Fee in full.

31. **OTHER DISCLOSURES** Buyer and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements. Broker can counsel on real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Buyer and Seller are further advised to seek appropriate professional advice concerning the condition of Property or tax and insurance matters. The following provisions of this Paragraph disclose some matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

A. **Property Condition** Various inspection services and home warranty insurance programs are available. Broker is not advising the parties as to certain other issues, including without limitation: water quality and quantity (including but not limited to, lead and other contaminants); sewer or septic; soil condition; flood hazard areas; possible restrictions of the use of Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including but without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), mold, polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, defective drywall, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

B. **Legal Requirements** All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and Delivery, this Contract becomes a legally binding agreement. Any changes to this Contract must be made in writing for such changes to be enforceable.

C. **Financing** Mortgage rates and associated charges vary with financial institutions and the marketplace. Buyer has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may require substantial lump sum (balloon) payments on the due dates. Buyer has not relied upon any representations regarding the future availability of mortgage money or interest rates for the refinancing of any such lump sum payments.

D. **Broker** Buyer and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector, or other professional service provider. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty

and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction pursuant to the terms of a separate agreement/disclosure.

E. **Property Taxes** Your property tax bill could substantially increase following settlement. For more information on property taxes contact the appropriate taxing authority in the jurisdiction where Property is located.

F. **Property Insurance** Obtaining property insurance is typically a requirement of the lender in order to secure financing. Insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective Buyer. Property insurance has become difficult to secure in some cases. Seller should consult an insurance professional regarding maintaining and/or terminating insurance coverage.

G. **Title Insurance** Buyer may, at Buyer's expense, purchase owner's title insurance. Depending on the particular circumstances of the transaction, such insurance could include affirmative coverage against possible mechanics' and materialmen's liens for labor and materials performed prior to Settlement and which, though not recorded at the time of recordation of Buyer's deed, could be subsequently recorded and would adversely affect Buyer's title to Property. The coverage afforded by such title insurance would be governed by the terms and conditions thereof, and the premium for obtaining such title insurance coverage will be determined by its coverage.

Buyer may purchase title insurance at either "standard" or "enhanced" coverage rates. For purposes of owner's policy premium rate disclosure by Buyer's lender(s), if any, Buyer and Seller require that enhanced rates be quoted by Buyer's lender(s). Buyer understands that nothing herein obligates Buyer to obtain any owner's title insurance coverage at any time, including at Settlement, and that the availability of enhanced coverage is subject to underwriting criteria of the title insurer.

32. **ASSIGNABILITY** This Contract may not be assigned without the written consent of Buyer and Seller. If Buyer and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

33. **DEFINITIONS**
   A. "Date of Ratification" means the date of Delivery of the final acceptance in writing by Buyer and Seller of all the terms of this Contract to Buyer and Seller (not the date of the expiration or removal of any contingencies).
   B. "Appraisal" means a written appraised valuation of Property.
   C. "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in this Contract.
   D. All reference to time of day shall refer to the time of day in the Eastern Time Zone of the United States.
   E. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified.
   F. For "Delivery" see DELIVERY paragraph.
   G. For "Specified Financing" see PRICE AND SPECIFIED FINANCING paragraph.
   H. The masculine includes the feminine and the singular includes the plural.
   I. For "Possession Date" see POSSESSION DATE paragraph.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    McGee Purchase

    J. "Legal Expenses" means attorney fees, court costs, and litigation expenses, if any, including, but not limited to, expert witness fees and court reporter fees.

    K. "Notices" ("Notice", "or", or "notify") means a unilateral communication from one party to another. All Notices required under this Contract will be in writing and will be effective as of Delivery. Written acknowledgment of receipt of Notice is a courtesy but is not a requirement.

    L. "Buyer" and "Purchaser" may be used interchangeably in this Contract and any accompanying addendum or notices.

**34.** **MISCELLANEOUS** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or handwritten provisions included in this Contract will control all pre-printed provisions that are in conflict.

**35.** **VOID CONTRACT** If this Contract becomes void and of no further force and effect, without Default by either party, both parties will immediately execute a release directing that the Deposit be refunded in full to Buyer according to the terms of the DEPOSIT paragraph.

**36.** **HOME WARRANTY** ☐ Yes OR ☒ No
Home Warranty Policy selected by ☐ Buyer or ☐ Seller and paid for and provided at Settlement by: ☐ Buyer or ☐ Seller. Cost not to exceed $_____ . Warranty provider to be _____

**37.** **TIME IS OF THE ESSENCE** Time is of the essence means that the dates and time frames agreed to by the parties must be met. Failure to meet stated dates or time frames will result in waiver of contractual rights or will be a Default under the terms of the Contract.

If this Contract is contingent on financing, and the contingency has not been removed or satisfied, any delay of the Settlement Date necessary to comply with Buyer's lender's obligations pursuant to the RESPA-TILA Integrated Disclosure rule, is not a Default by Buyer; but, Seller may declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing in writing to extend Settlement Date under terms acceptable by both parties.

**38.** ~~ARBITRATION Nothing in this Contract shall preclude arbitration under the Code of Ethics and Standards of Practice of the National Association of REALTORS®.~~

**39.** **REAL ESTATE LICENSED PARTIES** The parties acknowledge that ~~Seller~~ _____ is an ☒ active OR ☐ inactive licensed real estate agent in ☒ Virginia and/or ☐ Other _____ and is either the ☐ Buyer OR ☐ Seller OR ☐ is related to one of the parties in this transaction.

**40.** **ENTIRE AGREEMENT** This Contract will be binding upon the parties, and each of their respective heirs, executors, administrators, successors, and permitted assigns. The provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the Commonwealth of Virginia.

41. **ADDITIONS** The following forms, if ratified and attached, are made a part of this Contract. (This list is not all inclusive of addenda that may need to be attached).

- ☒ Yes ☐ No  Home Inspection/Radon Testing Contingency
- ☐ Yes ☒ No  Lead-Based Paint Inspection Contingency
- ☒ Yes ☒ No  Contingency and Clauses                    ☐ Yes ☒ No  Private Well and/or Septic
- ☐ Yes ☒ No  Pre-Settlement Occupancy                  ☐ Yes ☒ No  Post-Settlement Occupancy
- ☒ Yes ☒ No  Residential Property Disclosure           ☐ Yes ☒ No  Lead-Based Paint Disclosure
- ☒ Yes ☐ No  FHA Home Inspection Notice                ☒ Yes ☒ No  VA/FHA/USDA Financing
- ☒ Yes ☐ No  Conventional Financing                    ☒ Yes ☐ No  Other (specify): Short Sale Contin:
- ☐ Yes ☒ No  FIRPTA Addendum

CONTINGENCY Addendum & Short Sale
Bankruptcy Addendum
addendums,
Seller
addendum

42. **DISCLOSURE OF SALES PRICE TO APPRAISER** Listing Broker and Selling Broker are hereby authorized to release the Sales Price listed in PRICE AND SPECIFIED FINANCING Paragraph to any appraiser who contacts them to obtain the information.

43. **OTHER TERMS** All terms of listing and sale are subject to short sale lender + bankruptcy court approval

Property will be sold completely AS-IS

Date of Ratification (see DEFINITIONS)
November 20, 2018

SELLER:                                              BUYER:

11/15/18  Janet M Meuberger                         10-30-18
Date      Signature                                  Date      Signature
          Ronald D. Carter                                     Adam S. Brunson

Janet M. Meuberger, Bankruptcy Trustee

Date      Signature                                  Date      Signature
          Linda M. Carter

Date      Signature                                  Date      Signature

Date      Signature                                  Date      Signature

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** *Jim/AP* **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

For information purposes only:

Listing Brokerage's Name and Address:       Cooperating Brokerage's Name and Address:

~~Weichert, REALTORS~~ *BHHS Penfed Realty*     BHHS Penfed Realty

~~3998 Fair Ridge Dr. Suite 100~~ *3050*     1886 Metro Center Drive, Suite 200
~~Fairfax, VA  22033~~ *Chain Bridge*     Reston, VA  20190
*Fairfax, VA. 22030 Rd #105*

Brokerage Phone #: ~~(703) 934-0400~~     Brokerage Phone #: (703) 716-2900
*(703) 691-7653*

MRIS Broker Code: ~~WEI65~~ *PFED 8*     MRIS Broker Code: PFED48

VA Firm License #: _0226 01 0385_     VA Firm License #: 0226023548

Agent Name: Helaine Newman     Agent Name: David Poole

Agent Email: helainesells@gmail.com     Agent Email: astuterealtor@gmail.com

Agent Phone #: (703) 402-3134     Agent Phone #: (703) 362-0895

MRIS Agent ID # _68446_     MRIS Agent ID # _3016383_

VA Agent License #: _0225059153_     VA Agent License #: 0225192913

Team Leader Name: _Helaine Newman_     Team Leader Name: _David Poole_



© 2018 Northern Virginia Association of REALTORS®, Inc.

This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been
exclusively printed for the use of REALTOR® members of NVAR, who may copy or otherwise reproduce this form in
identical form with the addition of their company logo. Any other use of this form by REALTOR® members of NVAR,
or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR.
Notwithstanding the above, no REALTOR® member of NVAR, or any other person, may copy or otherwise reproduce
this form for purposes of resale.



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      McGee Purchase


**BERKSHIRE HATHAWAY**
HomeServices
PenFed Realty

# SHORT SALE CONTINGENCY ADDENDUM
## TO RESIDENTIAL SALES CONTRACT

This Addendum is made on _____ October 29, 2018 _____, to a sales contract ("Contract") offered on _____ October 29, 2018 _____, between **Adam S. Brunson**

~~Carter~~ *Janes M. Mulburger Bankruptcy Trustee* ("Purchaser") and ~~Ronald B. Carter, Linda M.~~ *For Linda Marie Carter # 18-10427* ("Seller") for the purchase and sale of the Property: **43336 Vestals Pl, Leesburg, VA 20176-8418**

1. Settlement under this Contract may result in a "short sale" of the Property.

2. **DEFINITIONS.**
   A. The term "Short Sale" is used to describe a sale where the debt owing against a property combined with the costs associated with the sale exceed the property's market value.
   B. "Seller's Net Proceeds" means the Sales Price less (i) Seller's expenses under the FEES paragraph of this Contract, (ii) Seller's obligation to pay Brokers Fees under the BROKER'S FEE paragraph of this Contract and (iii) any other obligations under this Contract.
   C. "Creditor Approval" means (i) the creditor(s)' written approval to sell the Property under the terms of this Contract; and (ii) the creditor(s)' written agreement to accept Seller's Net Proceeds in full satisfaction of Seller's obligation(s), liability under the Deed(s) of Trust, and/or any other liens, and provide Seller with a release of lien in recordable form.

3. Seller agrees to cooperate with Broker, Settlement Agent and creditor(s) to determine the amount of debt secured by or owed on the Property, including, but not limited to, deeds of trust, home equity loans, homeowner or condominium association fees, property taxes, and any other liens affecting the title to the Property.

*90 days from ratification*

4. Seller must provide Creditor Approval to Purchaser as required under the DEFINITIONS paragraph of this Addendum by ~~60 Days frm Ratification~~ ("Short Sale Deadline"). Such written evidence, if received by Seller, shall be delivered to Purchaser in a timely manner.
   A. If Seller has not Delivered Creditor Approval by the Short Sale Deadline, Purchaser may Deliver Notice to Seller of Purchaser's intent to void this Contract. Seller shall have 3 business Days from receipt of such Notice to Deliver Creditor Approval to Purchaser, or this Contract will be void.
   B. At anytime, if Seller receives a written rejection of the Short Sale from their creditor(s) and Delivers a copy of the written rejection to Purchaser, this Contract will be void. Purchaser and Seller acknowledge that Settlement is subject to Creditor Approval of Seller's Net Proceeds, which may not be finalized until Settlement. Purchaser and Seller agree to cooperate with reasonable requests from creditor(s) in a timely fashion.

5. If Seller cannot obtain Creditor Approval, Seller will immediately Deliver written Notice to Purchaser along with an executed Release of Sales Contract directing that the Deposit be returned to Purchaser.

Berkshire Hathaway HomeServices PenFed Realty - Reston, 1886 Metro Center Drive, Suite 200 Reston, VA 20190
Phone: 703-362-0895        Fax: 703-716-0017        David Poole
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.ziplogix.com

McGee Purchase

6. **TIMEFRAMES (Deposits, Inspections, Appraisal, and Financing Contingencies).**

   A. Deposit under the DEPOSIT Paragraph shall be Delivered by Purchaser to Escrow Agent:

   - [X] Pursuant to the DEPOSIT paragraph of the Contract   OR
   - [ ] Within _____ Days after the date Seller delivers Creditor Approval to Purchaser.

   B. Timeframes for all inspections referenced in this Contract, if applicable, shall be measured from:

   - [X] Date of Ratification   OR
   - [ ] Date Seller delivers Creditor Approval to Purchaser.

   C. Timeframe for Appraisal Contingency, if applicable, shall be measured from:

   - [ ] Date of Ratification   OR
   - [X] Date Seller delivers Creditor Approval to Purchaser.

   D. Timeframe for Financing Contingency, if applicable, shall be measured from:

   - [ ] Date of Ratification   OR
   - [X] Date Seller delivers Creditor Approval to Purchaser.   *JMM/ASB*

7. ~~**SETTLEMENT DATE.** If specified, the Settlement timeframe below will supersede the Settlement Date contained in this Contract. Settlement will be ____15____ Days after the date Seller delivers Creditor Approval to Purchaser.~~

---

| SELLER: | PURCHASER: |
|---|---|
| 11/15/18 , *Janet M. Meiburger* | 10-30-18 , *(signature)* |
| Date   Signature | Date   Signature |
| Ronald B. Carter. | Adam S. Brunson |
| *Janet M. Meiburger, Bankruptcy Trustee*   *JMM/ASB* | |
| Date   Signature | Date   Signature |
| Linda H. Carter | |
| Date   Signature | Date   Signature |
| Date   Signature | Date   Signature |



© 2015 Northern Virginia Association of REALTORS®, Inc.



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    McUco Purchase

**BERKSHIRE HATHAWAY**
HomeServices
PenFed Realty

## CONVENTIONAL FINANCING AND APPRAISAL CONTINGENCY ADDENDUM

This Addendum is made on _____October 29, 2018_____, to a sales contract ("Contract") offered on
_____October 29, 2018_____, between Adam S. Brunson

_____ ("Buyer") and Ronald B. Carter, Linda M.

Carter ~~Janet M. Meiburger, Bankruptcy Trustee~~
~~Farhinda Marie Custer # 18 - 1042 7~~ ("Seller") for the purchase and
sale of the Property: 43336 Vestals Pl, Leesburg, VA 20176-8418

1. **DEED(S) OF TRUST** Buyer shall pay upfront and/or monthly mortgage insurance premiums as required
   by lender guidelines.

2. **FINANCING CONTINGENCY**                                                            *short sale lender*
                                                                                          *A few credit approval*
   A. This Contract is contingent until 9 p.m. _____21_____ Days after Date of Ratification
      ("Financing Deadline") upon Buyer obtaining and delivering to Seller a written commitment(s) or
      conditional commitment(s), as the case may be, for the financing described in the PRICE AND
      SPECIFIED FINANCING paragraph of this Contract.

   B. If this contingency has not been satisfied by the Financing Deadline, this contingency will continue up
      to and including Settlement Date. However, upon expiration of the Financing Deadline, Seller may at
      Seller's option Deliver Notice to Buyer that Buyer has three days to void the Contract. If Buyer does
      not void the Contract within three days following Delivery of Seller's Notice, this contingency is
      removed and the Contract will remain in full force and effect with no Financing Contingency.

   C. This Contract will become void if, prior to satisfaction of this contingency, Buyer receives a written
      rejection from the lender or lenders to whom Buyer has applied pursuant to Paragraph 2 for the
      Specified Financing and Delivers a copy of the written rejection to Seller on or before Settlement Date.

   D. Buyer will be in Default whether or not the Financing Contingency has been removed if Settlement does
      not occur on Settlement Date for any reason other than Default by Seller.

   E. If this Contingency has expired, or not been removed or satisfied, any delay of the Settlement Date
      necessary to comply with Buyer's lender's obligations pursuant to the TILA-RESPA Inte-grated
      Disclosure rule, is not a Default by Buyer; but, Seller may declare the Contract void in writing.

   F. Nothing herein shall prohibit the parties from mutually ~~agreeing to terms acceptable to both parties in~~
      ~~writing.~~ *A few short sale approval*

3. **APPRAISAL CONTINGENCY** This Contract [X] is contingent OR [ ] is not contingent upon an
   Appraisal pursuant to this paragraph. Buyer shall have until 9 p.m. _____21_____ Days (minimum of 21
   days recommended) following the ~~Date of Ratification~~ to obtain an Appraisal ("Appraisal Deadline"). In the
   event that neither box is checked, this Contract is contingent upon an Appraisal pursuant to this paragraph
   and the Appraisal Deadline is the Financing Deadline set forth above. Buyer shall provide Notice to Seller
   by the Appraisal Deadline, as follows:

   A. The Appraisal is equal to or greater than the Sales Price. This contingency has been satisfied and
      removed. The parties shall proceed to Settlement; OR

NVAR – K1359 – rev. 07/16          Page 1 of 3          Initials: Seller ___   Buyer ___
Berkshire Hathaway HomeServices PenFed Realty - Reston . 1886 Metro Center Drive, Suite 200 Reston, VA 20190
Phone: 703-362-0895     Fax: 703-716-0017     David Poole          McGee Purchase
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

B. The Appraisal is equal to or greater than the Sales Price. However, Buyer elects not to proceed with consummation of this Contract because the Property does not satisfy the lender(s) requirements, the Appraisal does not allow for the Specified Financing or the Property is inadequate collateral. Such Notice must be accompanied by a written denial of the financing showing written evidence of the lender(s)'s decision concerning the Property. Buyer must provide such written evidence concurrently with Buyer's Notice of election not to proceed; OR

C. C.The Appraisal is not equal to or greater than the Sales Price and Buyer elects not to proceed with consummation of this Contract unless Seller elects to lower the Sales Price to the appraised value. Buyer's Notice shall include a copy of the written statement setting forth the appraised value of the Property. It will be Seller's option to lower the Sales Price to the appraised value and the parties shall proceed to Settlement at the lower Sales Price. If Seller does not make this election, the parties may agree to mutually acceptable terms. Each election must be made by Notice within 3 Days after Notice from the other party. The parties will immediately sign any appropriate amendments. If the parties fail to agree, this Contract will become void; OR

D. Buyer elects to proceed with consummation of this Contract without regard to the Appraisal. The parties shall proceed to Settlement.

If Buyer fails to give Seller Notice by the Appraisal Deadline, this contingency will continue, unless Seller at Seller's option gives Notice to Buyer that this Contract will become void. If Seller delivers such Notice, this Contract will become void at 9 p.m. on the third day following Delivery of Seller's Notice, unless prior to such date and time Buyer delivers the required Notice.

4. **SELLER SUBSIDY** Seller will pay at Settlement $ 3% _____ toward Buyer's charges (including but not limited to loan origination fees, discount points, buy down or subsidy fees, prepaids or other charges) as allowed by lender(s). It is Buyer's responsibility to confirm with his lender(s) that the entire credit provided herein may be utilized. If lender(s) prohibits Seller from the payment of any portion of this credit, then said credit shall be reduced to the amount allowed by lender(s).

5. **LENDER REQUIRED REPAIRS** If, as a condition of providing financing under this Contract, the lender(s) requires repairs to be made to the Property, then Buyer will give Notice to Seller of the lender(s)'s required repairs. Within 5 Days after such Notice, Seller will give Notice to Buyer as to whether Seller will make the repairs. If Seller will not make the repairs, Buyer will give Notice to Seller within 5 Days after Seller's Notice as to whether Buyer will make the repairs. If neither Seller nor Buyer will make the repairs, then this Contract will become void. This clause will not release Seller from any responsibilities set forth in the paragraphs titled UTILITIES WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING; PERSONAL PROPERTY AND FIXTURES; WOOD-DESTROYING INSECT INSPECTION; or in the Private Well and/or Septic System Addendum or any terms specifically set forth in this Contract and any addenda.

*See par 3 of Short Sale addendum*

**SELLER:**

11/15/18 _Janet M. Melburger_
Date _____ Signature
~~Ronald B. Carter~~

**BUYER:**

10-30-18
Date _____ Signature
Adam S. Brunson

_Janet M. Melburger, Bankruptcy Trustee_
Date _____ Signature
~~Linda M. Carter~~

_____ / _____
Date _____ Signature

_____ / _____
Date _____ Signature

_____ / _____
Date _____ Signature

_____ / _____
Date _____ Signature

© 2016 Northern Virginia Association of REALTORS®, Inc.



This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTORS®, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTORS®, or any use of this form whatsoever by non- REALTORS®, is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR®, or any other person, may copy or otherwise reproduce this form for purposes of resale.



Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                McGee Purchase

⊕
**BERKSHIRE**
**HATHAWAY**
HomeServices
PenFed Realty

## CONTINGENCIES/CLAUSES ADDENDUM

This Addendum is made on _____ November 5, 2018 _____ , to a sales contract ("Contract") offered on
_____ October 29, 2018 _____ , between Adam S. Brunson

_____ ("Buyer") and Janet M. Meiburger, Bankruptcy Trustee

Linda Marie Curtis Case # 18-10427

_____ ("Seller") for the purchase and sale of the Property: 43336 Vestals
Pl, Leesburg, VA 20176-8418

The following provisions if initialed by the parties are incorporated into and made a part of this Contract:

## 1. CONTINGENCIES

A. **SALE OF BUYER'S PROPERTY AND KICK-OUT** This Contract is contingent until 9 p.m.
_____ Days after Date of Ratification ("Deadline") upon the sale of Buyer's property
located at _____

("Buyer's Property"). If Buyer does not satisfy, amend or remove this contingency by the Deadline
pursuant to sub-paragraph 3 below, this Contract will become void.

1) Seller may continue to offer Property for sale and accept bona fide back-up offers to this Contract
until this contingency is satisfied or removed. If a back-up offer is accepted, Seller will Deliver
Notice to Buyer requiring that this contingency be removed or satisfied pursuant to
sub-paragraph 3 below not later than 9 p.m. _____ days after Delivery of Notice or this
Contract will become void. If Buyer fails to satisfy or remove the contingency by Deadline, this
Contract will become void.

2) Buyer's Property will be listed exclusively and actively marketed by a licensed real estate broker
and entered into a multiple listing service within _____ days after the Date of Ratification
at a price not to exceed $ _____ .

3) Buyer may:

   a. Satisfy this contingency by Delivering to Seller a copy of the ratified contract for the sale of
   Buyer's Property with evidence that all contingencies, other than financing and appraisal, have
   been removed or waived by Deadline **OR**

   b. Remove this contingency by Delivering to Seller (1) a letter from the lender stating that the
   financing is not contingent in any manner upon the sale and settlement of any real estate or
   obtaining a lease of any real estate and that Buyer has sufficient funds available for the down
   payment and closing costs necessary to complete Settlement; **OR** (2) evidence of sufficient
   funds available to complete Settlement without obtaining financing.

NVAR – K1344 – rev. 07/17                     Page 1 of 4                Seller _____ Buyer: _____

4) If Buyer satisfies the requirements of sub-paragraph 3.a. above, this Contract will remain contingent upon the settlement of the sale of Buyer's Property. This paragraph will survive the satisfaction of the contingency for the sale of Buyer's Property. Settlement (under this Contract) may not be delayed more than _____ Days after the Settlement Date (specified in this Contract) without the parties' written consent. Seller ☐ will OR ☐ will not accept an assignment of funds. If a further delay is required to obtain coinciding settlements, Buyer may at Buyer's option declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties. If at any time after Date of Ratification the contract for the sale of Buyer's Property becomes void, Buyer will immediately Deliver Notice to Seller together with evidence of such voiding, at which time either Seller or Buyer may declare this Contract void by Delivering Notice to the other party.

**B. SETTLEMENT OF BUYER'S PROPERTY** Settlement of this Contract is contingent upon the settlement of the contract for the sale of Buyer's property located at _____
_____
_____ ("Buyer's Property").
Settlement (under this Contract) may not be delayed more than _____ Days after Settlement Date (specified in this Contract) without the parties' written consent. Seller ☐ will OR ☐ will not accept an assignment of funds. If a further delay is required to obtain coinciding settlements Buyer may at Buyer's option declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties. , If at any time after the Date of Ratification the contract for the sale of Buyer's Property becomes void, Buyer will immediately Deliver Notice to Seller together with evidence of such voiding, at which time either Seller or Buyer may declare this Contract void by Delivering Notice to the other party.

**C. CONTINGENT ON THE SELLER PURCHASING ANOTHER HOME** This Contract is contingent until 9 p.m. _____ Days after Date of Ratification ("Deadline") to allow Seller to ratify a contract for purchase of another home and conduct whatever due diligence Seller deems necessary under the terms of Seller's contract to purchase another home. This contingency will terminate at Deadline and this Contract will remain in full force and effect unless Seller delivers Notice to Buyer, prior to Deadline, that this Contract is void.

**D. GENERAL** This Contract is contingent until 9 p.m. _____ Days after Date of Ratification ("Deadline") upon: _____
_____
_____
_____
_____
_____
_____
_____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Brunson Purchase

## 2. CLAUSES

**A. BACK-UP CONTRACT** This Contract is first back-up to another contract dated _____ between Seller and _____ _____ as Buyer.

This Contract becomes the primary contract immediately upon Notice from Seller that the contract is void. All deadlines contained in this Contract shall be measured from ☐ Date of Ratification OR ☐ date this Contract becomes primary. Additionally, Settlement Date will be _____ days after the date this Contract becomes primary. Buyer may void this back-up Contract at any time by Delivering Notice to Seller prior to Delivery of Notice from Seller that this Contract has become the primary contract. If the other contract settles, this Contract will become void. The rights and obligations of the parties under the primary contract are superior to the rights and obligations of the parties to this back-up Contract.

**B. "AS IS" PROPERTY CONDITION** The following terms in this Contract are hereby amended (check all that apply):
- ☒ All clauses pertaining to delivery of Property free and clear of trash and debris and broom clean are deleted
- ☒ Buyer assumes responsibility for compliance with all laws and regulations regarding smoke detectors
- ☒ All clauses pertaining to termites and wood-destroying insects are deleted
- ☒ All clauses pertaining to Seller's compliance with all orders or notices of violation of any county or local authority are deleted
- ☒ All requirements for Seller to comply with Property Owners' or Condominium Owners' Associations notices of violations related to the physical condition of Property are deleted

**C. UNREPRESENTED SELLER OR BUILDER AND BUYER'S BROKER** Upon Seller's irrevocable instruction, it is understood and agreed by all parties that _____ _____ (Cooperating Broker's name) of _____ (Cooperating Broker's firm) is acting as an agent solely representing Buyer in this transaction ("Buyer's Broker"). Seller agrees to pay Buyer's Broker a payment of $ _____ ☐ in cash OR ☐ _____ % of the total sales price. Settlement Agent is hereby irrevocably directed to deduct Buyer's Broker fee from Seller's proceeds of the sale at Settlement. The parties acknowledge that Buyer's Broker relationship was disclosed to Seller and/or Seller's agent prior to showing Property to Buyer.

**D. 1031 EXCHANGE (BUYER)** Property is being acquired to complete an IRC Section 1031 tax-deferred exchange pursuant to an exchange agreement. This Settlement will be coordinated with _____ _____ , ("Intermediary"), who shall instruct Seller as to the manner Property shall be conveyed to Buyer. There shall be no additional expense to Seller as a result of the exchange and Seller shall cooperate with Buyer and Intermediary in the completion of the exchange.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Brunson Purchase

**E. 1031 EXCHANGE (SELLER)** Seller and Buyer agree to transfer Property by utilizing an IRC Section 1031 tax-deferred exchange. Buyer agrees to cooperate with Seller, at no expense or liability to Buyer, in the completion of the exchange, including execution of all necessary documents, the intention of the parties being that Seller utilizes Section 1031 to defer taxes by acquiring like-kind real estate through an exchange agreement established at Settlement. The parties will execute all necessary documents as determined by Intermediary at Settlement, which documents are prepared at Seller's expense.

**F. REAL ESTATE COOPERATIVE** (Virginia Real Estate Cooperative Act § 55-483 et seq.) Seller ☐ has delivered OR ☐ will deliver to the Buyer the required public offering statement. If the statement was delivered prior to the Date of Ratification then Buyer has 10 days from the Date of Ratification to void this Contract by Delivering a Notice to Seller. If the statement was delivered after the Date of Ratification, then Buyer will have five days from receipt of the statement or Date of Settlement, whichever occurs first, to void the contract by Delivering a Notice to Seller.

**Except as modified by this Addendum, all of the terms and provisions of this Contract are hereby expressly ratified and confirmed and will remain in full force and effect.**

| SELLER: | BUYER: |
|---|---|
| 11/15/18 / _Janet M. Meiberger_ | 11/16/18 / |
| Date          Signature | Date          Signature |
| _Janet M. Meiberger_ | _Janet M. Meiburger, Bankruptcy_ |
| _Bankruptcy Trustee_ | / ADAM S. BRUNSON |
| Date          Signature | Date          Signature |
| Date          Signature | Date          Signature |
| Date          Signature | Date          Signature |



© 2017 Northern Virginia Association of REALTORS®, Inc.



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Carter House-

**Seller Addendum to Residential Sales Contract Dated
October 29, 2018 for Real Property Located at
43336 Vestals Place, Leesburg, VA 20176**

A.      The contract for the sale of the Property is subject to higher and better offers and to the approval of the United States Bankruptcy Court.

B.      The Trustee will convey the Property by special warranty deed.

C.      The Property is being sold in as-is condition without any representations or warranties by the Seller.

D.      All affidavits, lien waivers, etc. which are to be signed by the Trustee will be based on her actual knowledge.

E.      Any dispute arising out of any sales contract for the Property shall be resolved in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division.

F.      If this Addendum differs from the Sale Contract in any way, the terms of this Addendum will control.

SELLER:

_11/15/18_  _Janet M. Meiburger_
Date / Signature
        _Trustee_

PURCHASER:

_11-16-18_  _(signature)_
Date / Signature

PURCHASER:

_____
Date / Signature

**BERKSHIRE HATHAWAY**
HomeServices
PenFed Realty

# HOME INSPECTION AND RADON TESTING CONTINGENCY ADDENDUM

This Addendum is made on _____ October 29, 2018 _____ , to a sales contract ("Contract") offered on
_____ October 29, 2018 _____ , between Adam S. Brunson

_____ ("Buyer") and ~~Ronald B. Carter, Linda M. Carter~~

_____ Janet M. Meiburger, Bankruptcy Trust _____

_____ ("Seller") for the purchase and sale of the Property: 43336 Vestals

Pl, Leesburg, VA  20176-8418

[select 1 or 2 below] Trustee for Linda

Murie Carter #18-10427

## I. HOME INSPECTION WITH OPTION TO NEGOTIATE REPAIRS OR VOID

**A. Inspection Period** Contract is contingent ("Home Inspection Contingency") until 9 p.m. _____N/A_____
days after Date of Ratification ("Home Inspection Deadline") upon inspection(s) of the Property by
licensed (if applicable), professional, insured inspector(s) ("Inspection") at Buyer's discretion and
expense. Pursuant to the terms of this Contract, Seller will have all utilities in service. If, for any
reason, the utilities are not in service, Home Inspection Deadline will be extended until 9 p.m. _____N/A_____
days after Buyer receives Notice from Seller that all utilities are in service.

If the results of such Inspection(s) are unsatisfactory to Buyer, in Buyer's sole discretion, Buyer shall
Deliver to Seller, prior to Home Inspection Deadline:

1) An entire copy of the report(s) and a written addendum listing the specific existing deficiencies of
   Property that Buyer ~~would like Seller to remedy together with~~ Buyer's proposed remedies
   ("Inspection Addendum") OR

2) An entire copy of the report(s) and Notice voiding Contract.

If Buyer fails to obtain an Inspection, fails to Deliver a copy of the report(s) to Seller, or fails to
Deliver Inspection Addendum or Notice voiding this Contract prior to Home Inspection Deadline, this
Contingency will expire and this Contract will remain in full force and effect with no Home Inspection
Contingency.

**B. Negotiation Period** In the event of A.1) above, the parties shall have until 9 p.m. _____N/A_____
days after Buyer's Delivery of Inspection Addendum ("Negotiation Period") to negotiate a mutually
acceptable written addendum addressing the deficiencies.

At any time during Negotiation Period, Buyer or Seller may make, modify, rescind, or alter as many
offers and counter-offers as desired to reach mutually acceptable terms. Buyer and Seller may agree on
terms by signing a written addendum describing agreed upon deficiencies and remedies within
Negotiation Period.

**C. Buyer's Election** If, at the end of Negotiation Period, the parties are unable to reach an agreement,
Buyer shall have the option to void this Contract by Delivering Notice to Seller by 9 p.m. _____N/A_____
days following the end of Negotiation Period, otherwise Home Inspection Contingency shall be
removed and this Contract will remain in full force and effect.

Berkshire Hathaway HomeServices PenFed Realty - Reston , 1886 Metro Center Drive, Suite 200 Reston, VA 20190
Phone: 703-362-0895        Fax:  703-716-0017        David Poole                                    McGee Purchase
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**2. HOME INSPECTION WITH OPTION TO VOID ONLY**

A. Inspection Period Contract is contingent ("Home Inspection Contingency") until 9 p.m. _____10_____ days after Date of Ratification ("Home Inspection Deadline") upon inspection(s) of the Property by licensed (if applicable), professional, insured inspector(s) ("Inspection") at Buyer's discretion and expense. Pursuant to the terms of this Contract, Seller will have all utilities in service. If, for any reason, the utilities are not in service, Home Inspection Deadline will be extended until 9 p.m. _____5_____ days after Buyer receives Notice from Seller that all utilities are in service.

If the results of such Inspection(s) are unsatisfactory to Buyer, in Buyer's sole discretion, Buyer shall Deliver to Seller, prior to Home Inspection Deadline an entire copy of the report(s) and Notice voiding Contract.

If Buyer fails to obtain an Inspection, fails to Deliver a copy of the report(s) to Seller, or fails to Deliver Notice voiding this Contract prior to Home Inspection Deadline, this Contingency will expire and this Contract will remain in full force and effect with no Home Inspection Contingency.

**3. RADON TESTING**

A. Radon Inspection Period This Contract is contingent ("Radon Inspection Contingency") until 9 p.m. _____12_____ days after the Date of Ratification ("Radon Testing Deadline") upon Buyer, at Buyer's discretion and expense, having the Property inspected for the presence of radon and receiving a report ("Radon Report") from the test, by a radon professional certified by the National Radon Safety Board ("NRSB"), or the National Radon Proficiency Program ("NRPP") ("Radon Professional") using U.S. Environmental Protection Agency ("EPA") approved testing methods. Testing device(s) to be placed and retrieved by Radon Professional. Pursuant to the terms of this Contract, Seller will have all utilities in service. If, for any reason, the utilities are not in service, Radon Testing Deadline will be extended until 9 p.m. _____5_____ days after Buyer receives Notice from Seller that all utilities are in service.

B. Testing Guidelines Seller agrees to follow EPA guidelines and testing recommendations in order to produce accurate results. These guidelines include the following requirements to be in place 12 hours prior to the scheduled test period and throughout the duration of the test:

a. ALL windows must remain shut

b. Exterior doors should be used only for normal ingress/egress and must not be left open

c. Whole house exhaust fans or smaller fans near the testing device(s) must not be used

Should Radon Professional indicate in writing that these requirements have not been met, Seller shall pay for a new test under Buyer's direction and Radon Inspection Contingency shall automatically be extended until 9 p.m. _____7_____ days after Seller notifies Buyer that these requirements are in place.

If Radon Report confirms the presence of radon that equals or exceeds the action level established by the EPA, Buyer, at Buyer's sole discretion, shall Deliver to Seller, prior to Radon Testing Deadline:

1) An entire copy of Radon Report and a written addendum requiring Seller, at Seller's expense prior to Settlement: (i) to mitigate the radon condition by contracting with a NRSB or NRPP listed remediation firm to reduce the presence of radon below the action level established by the EPA; and (ii) to Deliver to Buyer a written re-test result performed by a Buyer-selected Radon Professional and following the required Testing Guidelines ("Radon Inspection Addendum") OR

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

2) An entire copy of Radon Report and Notice voiding this Contract.

If Buyer fails to obtain an inspection, fails to Deliver a copy of Radon Report to Seller, or fails to Deliver Radon Inspection Addendum or Notice voiding this Contract prior to Radon Testing Deadline, this Contingency will expire and this Contract will remain in full force and effect with no Radon Inspection Contingency.

**C.  Radon Negotiation Period** In the event of B.1. above, the parties shall have until 9 p.m. _____5_____ days after Buyer's Delivery of Radon Inspection Addendum ("Radon Negotiation Period") to negotiate a mutually acceptable written addendum.

At any time during the Radon Negotiation Period, Buyer or Seller may make, modify, rescind, or alter as many offers and counter-offers as desired to reach mutually acceptable terms. Buyer and Seller may agree on terms by signing a written addendum describing agreed upon terms within Radon Negotiation Period.

**D.  Buyer's Election** If, at the end of Radon Negotiation Period, the parties are unable to reach an agreement, Buyer shall have the option to void Contract by Delivering Notice to Seller by 9 p.m. _____2_____ days following the end of Radon Negotiation Period, otherwise Radon Inspection Contingency shall be removed and Contract will remain in full force and effect.

---

**SELLER:**

11/15/18  Janet M Meiburger
Date    Signature
~~Ronald B. Carter~~

Janet M. Meiburger, Bankruptcy Trustee
Date    Signature
~~Linda N. Carter~~

Date    Signature

Date    Signature

**PURCHASER:**

10-30-18
Date    Signature
Adam S. Brunson

Date    Signature

Date    Signature

Date    Signature

---

© 2017 Northern Virginia Association of REALTORS®, Inc.



This is a suggested form of the Northern Virginia Association of REALTORS® ("NVAR"). This form has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® and Non-Resident members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

## SHORT SALE ADDENDUM

to Contract of Sale Dated **10/29/18**_____, 2018 for the property known as
_43336 Vestals Pl, Leesburg, VA 20176_ (the Property) between
_Janet M. Meisinger   Bankruptcy_, Trustee (Seller) and
_Alan S. Brunson_ _____ (Buyer)

*The above referenced Contract of Sale is hereby amended by incorporation of this Addendum,
which shall supersede any provisions to the contrary in the Contract.*

1.   Buyer will be responsible for ordering and paying for any and all HOA/Condo
Association documents within 5 days of short sale lender approval.

2.   Buyer shall pay a fee of 3 % of the approved purchase price, to the Bankruptcy Estate at
closing.  (If the price increases, the bankruptcy estate fee will also increase to remain at 3%).
Seller will request for this fee to be paid by the short sale lender, but is subject to third party
approval and the Buyer is ultimately responsible for this fee.

3.   A closing cost credit of 3% of the purchase price will be requested from the short sale
lender to offset the fee to the bankruptcy estate, but is subject to third party approval. (If the price
increases, the closing credit will also increase to remain at 3%).  Typically the lender will pay for
the Bankruptcy Estate Fee or the closing credit, but not both.

4.   The Seller shall pay for 100% of Government Taxes and Owner's Title Insurance on the
seller's side of the settlement statement and in exchange the Buyer will pay an amount *equal* to
what they would have paid for the above fees to the Special Counsel Fee on the Buyer side of the
Settlement Statement.  This is an even exchange of fees with no change to the buyer's total
closing costs. Any exchange of fees is subject to Third Party Approval.

5.   The short sale lender may require certain fees to be paid on the Buyer's side of the CD to
comply with their investor guidelines. (Examples include: past due HOA/ condo dues, resale
documents, front foot benefit or sewer liens, water escrow, attorney fees, liens and judgments).
An *equal* amount of buyer closing costs will be paid for by the seller to offset any charges to the
buyer. (Buyer closing costs may include pre-payment of real estate taxes, title company fees,
survey or abstract charges from third parties or other buyer side fees that the short sale lender
will allow). This is an even exchange of fees with no change to the buyer's total closing
costs. Any exchange of fees is subject to Third Party Approval.

6.   The Buyer is responsible for promptly submitting this Addendum to Buyer's lender
for underwriting review so that the closing documents will reflect the terms of the contract.

BUYER _____  10-30-18

SELLER _Janet M. Meisinger_ 11/15/18

**BERKSHIRE
HATHAWAY**
HomeServices
PenFed Realty

## ADDENDUM - SALE

This Addendum is made on _____ **February 11, 2019** _____ , to a sales contract ("Contract") offered on **October 29, 2018** _____ , between **Adam S. Brunson** _____

_____ ("Buyer") and **Janet M. Meiburger Bankrutpcy** _____

**Trustee** _____ ("Seller") for the purchase and

sale of the Property: **43336 Vestals Place, Leesburg, VA  20176** _____

The parties agree that this Contract is modified as follows:
**Purchaser agrees to a cash contribution of $5,000 at closing to be paid toward the bankruptcy estate fee. This is considered a closing cost for the buyer.**

This Addendum shall not alter, modify, or change in any other respect this Contract, and except as modified herein, all of the terms and provisions of this Contract are expressly ratified and confirmed and shall remain in full force and effect.

**SELLER:**

2/11/2019 _____ Janet M. Meiburger _____
Date        Signature
**Janet M. Meiburger Bankrutpcy Trustee**

**PURCHASER:**

2-12-191 _____
Date        Signature
**Adam S. Brunson**

_____ / _____        _____ / _____
Date        Signature        Date        Signature

_____ / _____        _____ / _____
Date        Signature        Date        Signature

_____ / _____        _____ / _____
Date        Signature        Date        Signature

© 2019 Northern Virginia Association of REALTORS®, Inc.

NVAR – K1117 – rev. 01/19
Berkshire Hathaway HomeServices PenFed Realty - Oakton, 3050 Chain Bridge Rd., #105 Fairfax VA 22030       Phone: (703) 691-7653       Fax: (703) 691-7662       Carter House-
Helaine Newman                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**Scanned with CamScanner**

# EXHIBIT B

P.O. Box 10826
Greenville, SC 29603-0826



Phone Number: 866-825-2174
Fax: 866-467-1187
Email: finalssdocs@shellpointmtg.com

Hours of Operation
Mon - Thurs: 8:00AM-6:00PM
Fri: 8:00AM-5:00PM



### Instructions to Closing Agent

1. Have seller review Agreement to Release Collateral Interest
2. Follow all stipulations in the Agreement to Release Collateral Interest
3. Return via fax or email the signed:
   A. Final settlement statement
   B. Signed Agreement to Release Collateral
   C. Junior lien approval letter(s)
   D. Wire transfer confirmation
   E. The signed short sale affidavit(if applicable).

4. Please call our office with the wire confirmation number or the overnight mail tracking ID.  If you are sending funds by wire you must include our loan number in the "reference" line of the wire to ensure that funds are posted in a timely manner.

### Wiring and Overnight Instructions

Wiring Instructions
Bank:  Wells Fargo Bank
ABA Number:  121000248
Account Number:  2020050813199
** Reference:  0515407388

Overnight Mail Address
Shellpoint Mortgage Servicing
Attn:  Loss Mitigation / 866-825-2174
55 Beattie Place, Suite 110 (MS 157)
Greenville, SC  29601

SHOV CORP Fax Srvr    2/19/2019 4:07:14 PM    PAGE    2/006    Fax Server
From: Shellpoint Mortgage Servicing    To: 8668247163    16:15:11    Desc Main
Case 18-10427-BFK    Doc 68    Filed 03/01/19    Entered 03/01/19
Document    Page 43 of 62



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED





S-SFRECS20 L-081 R-106
P9NUBO00100091 - I00209
RONALD B CARTER
LINDA CARTER
43336 VESTALS PL
LANSDOWNE VA 20176-8418

02/19/2019

## Agreement to Release Collateral Interest

RE: 0515407388

Property Address: 43336 Vestals Place  Leesburg, VA 20176

Sellers: Ronald B Carter
         Linda Carter

Total Debt Payoff Amount as of **02/13/2019: $1,040,568.81**

Shellpoint Mortgage Servicing ("Shellpoint") has obtained investor approval to release the collateral interest for an amount less than the total due on this loan, subject to the terms and conditions listed below.  By  03/29/2019, we must receive the final Settlement Statement, all of the other final approved documents, and no less than the full amount of short sale proceeds specified within this document.

1. Shellpoint is to receive proceeds in an amount not less than $785,237.49 on or before **03/29/2019**. Proceeds must be remitted in certified funds and sent by overnight mail or by wire. The amount is calculated as a minimum. In the event that the net proceeds from the sale exceed the minimum payoff amount, the excess proceeds must be remitted to Shellpoint.   **This Deficiency Waiver Agreement is provided to you in connection with the promissory note ( Note ) secured by the property located at 43336 Vestals Place  Leesburg, VA20176. Upon receipt of certified funds, Shellpoint  HEREBY CANCELS any remaining indebtedness excluding any contribution required from the (Seller) under that certain Note and Mortgage, Deed of Trust, or Security Deed (the  Security Instrument ) dated 10/27/2004, provided that the  short sale  is completed in accordance with the approved terms and conditions.**

   | Wiring Instructions | Overnight Mail Address |
   |---|---|
   | Bank: Wells Fargo Bank | Shellpoint Mortgage Servicing |
   | ABA Number: 121000248 | Attn: Loss Mitigation / 866-825-2174 |
   | Account Number: 2020050813199 | 55 Beattie Place, Suite 110 (MS 157) |
   | ** Reference:0515407388 | Greenville, SC  29601 |

2. Closing Costs have been negotiated and agreed upon as of 02/19/2019 as follows:
   a. Contract Sale Price: $875,000.00
   b. Total closing costs not to exceed $25,262.51
   c. Maximum commission paid $52,500.00
   d. Maximum amount allowed for junior lien holder $8,500.00
   e. Maximum amount allowed for HOA $3,500.00
   f. Maximum amount allowed for incentive $0.00

3. Seller is to receive no proceeds from this transaction other than relocation assistance or incentive (if applicable)

4. Approval is contingent upon review of final settlement statement.  If the conditions of the short sale approval are not met, we will cancel this offer.

5. The seller may not incur any obligations for repairs or expenses which would reduce the required minimum payoff. All repairs are the responsibility of the borrower.

6. The completion of a short sale may involve debt forgiveness and have tax consequences. You are strongly encouraged to consult with your legal and/or tax advisor(s) prior to accepting this offer.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000002 A-0515407388 02066020530000



## Shellpoint
### Mortgage Servicing



Phone Number: 866-825-2174
Fax: 866-467-1187
Email: finalssdocs@shellpointmtg.com

| | |
|---|---|
| Servicer: Shellpoint Mortgage Servicing | Servicer Loan Number: 0515407388 |

Address of Property: 43336 Vestals Place   Leesburg, VA 20176

Date of Purchase Contract: 10/29/2018 — Investor: BANK OF NEW YORK AS TRUSTEE FOR CWMBS 2005-HYB2

Seller: Ronald B Carter — Buyer: Adam S. Brunson

Seller: Linda Carter

Seller s Agent/Listing Agent:BHHS Penfed Realty Helaine Newman — Buyer s Agent: BHHS Penfed Realty David Poole

Escrow Closing Agent: RL Title and Escrow, Inc.

This Short Sale Affidavit ( Affidavit ) is given by the Seller(s), Buyer(s), Agent(s), and Facilitator to the Servicer and the Investor of the mortgage loan secured by the Property ( Mortgage ) in consideration for the mutual and respective benefits to be derived from the short sale of the Property.

NOW, THEREFORE, the Seller(s), Buyer(s), Agent(s), and Facilitator do hereby represent, warrant and agree under the pains and penalties of perjury, to the best of each signatory's knowledge and belief, as follows:

(a) The sale of the Property is an "arm's length" transaction, between Seller(s) and Buyer(s) who are unrelated and unaffiliated by family, marriage, or commercial enterprise;

(b) There are no agreements, understandings or contracts between the Seller(s) and Buyer(s) that the Seller(s) will remain in the Property as tenants or later obtain title or ownership of the Property, except that the Sellers(s) are permitted to remain as tenants in the Property for a short term, as is common and customary in the market but no longer than ninety (90) days, in order to facilitate relocation;

(c) Neither the Sellers(s) nor the Buyer(s) will receive any funds or commissions from the sale of the Property except that the Seller(s) may receive a payment if it is offered by the Servicer, approved by the Investor and, if the payment is made at closing of the short sale of the Property, reflected on the Settlement Statement;

(d) There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Property that have not been disclosed to the Servicer;

(e) All amounts to be paid to any person or entity, including holders of other liens on the Property, in connection with the short sale have been disclosed to and approved by the Servicer and will be reflected on the Settlement Statement;

(f) Each signatory understands, agrees and intends that the Servicer and the Investor are relying upon the statements made in is Affidavit as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Property;

(g) A signatory who makes a negligent or intentional misrepresentation agrees to indemnify the Servicer and the Investor for any and all loss resulting from the misrepresentation including, but not limited to, repayment of the amount of the reduced payoff of the Mortgage;

(h) This Affidavit and all representations, warranties and statements made herein will survive the closing of the short sale transaction; and

(i) Each signatory understands that a misrepresentation may subject the person making the misrepresentation to civil and/or criminal liability.

| Seller Signature | Ronald B Carter | Date |

| Seller Signature | Linda Carter | Date |

| Buyer Signature | Adam S. Brunson | Date |

| Seller s Agent Signature | BHHS Penfed Realty Helaine Newman | Date |

| Buyer s Agent Signature | BHHS Penfed Realty David Poole | Date |

| Escrow Closing Agent s Signature | RL Title and Escrow, Inc. | Date |





Phone Number: 866-825-2174
Fax: 866-467-1187
Email: finalssdocs@shellpointmtg.com

Servicer: Shellpoint Mortgage Servicing

Servicer Loan Number: 0515407388

Address of Property: 43336 Vestals Place   Leesburg,  VA 20176

Date of Purchase Contract: 10/29/2018

Investor: BANK OF NEW YORK AS TRUSTEE FOR
CWMBS 2005-HYB2

Seller: Ronald B Carter

Buyer: Adam S. Brunson

Seller: Linda Carter

Seller s Agent/Listing Agent:BHHS Penfed Realty Helaine
Newman

Buyer s Agent: BHHS Penfed Realty David Poole

Escrow Closing Agent: RL Title and Escrow, Inc.

## SHORT SALE CONDITIONAL WAIVER

I am prohibited by law from signing the Short Sale Affidavit for this transaction.  By signing this conditional waiver, I agree that I
will not act as the closing agent on a subsequent transaction involving the subject property within one year of the closing of this
short sale transaction.

_____          _____

Escrow Closing Agent s Name                                                          Date

_____          _____

Escrow Closing Agent s Signature                                                     Date

**Please read the following important notices as they may affect your rights.**

NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing s NMLS ID is 3013.



If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember s military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the transition process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-825-2174 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-825-2174 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电 866-825-2174，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

# EXHIBIT C

C3_12488_SS_Approval_Letter_Combined_072117



PO Box 31690
Tampa, FL 33631-3690

**Date:** February 8, 2019

**Loan No.:**
122046220

RONALD & ILINDA CARTER
43336 VESTALS PL
LANSDOWNE, VA 20176-8418

**Borrowers:**
RONALD & ILINDA CARTER
RONALD & LINDA CARTER
RONALD CARTER
LINDA CARTER

**Property Address:**
43336 VESTALS PL
LEESBURG, VA 20176

# Your short sale is approved.  We're providing information about next steps.

**If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt. You are not obligated to discuss the home loan with us or enter into a loan-assistance program.**

We are pleased to approve the short sale offer submitted to us on the above listed property . Please read this letter carefully because it includes important information you need to understand to successfully complete the short sale. If you are currently in an active bankruptcy proceeding, please consult with your bankruptcy attorney about how a short sale could affect your bankruptcy case.  Please note that any final agreement is contingent upon bankruptcy court approval and may require amendment of your bankruptcy plan.

This package includes the next steps to complete your short sale.

1. Read this thoroughly and make sure you understand all of the conditions of the short sale.

2. Sign and review closing documents outlined in the letter.

3. If you have any questions, call 800.669.6650.

## What this means to you

- Bank of America, N.A. and/or the investor, and/or the mortgage insurer/guarantor, if applicable, on your loan have approved the short sale of the property.  This approval is only for the offer from the buyer referenced in the terms and conditions of this letter.

 A  short sale allows you to sell the property at fair market value, even if it's less than what you owe on the home loan.  When you sell your property for less than what you owe, a deficiency is created.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.  If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

Bank of America and the Bank of America logo are registered trademarks of the Bank of America Corporation
Bank of America, N.A. Member FDIC © 2017 Bank of America Corporation

C3_12488_072117

A deficiency is the remaining balance between what you owe on the loan minus the amount received from the sale and any final payment you must make before completing the short sale. If any portion of the deficiency is waived or forgiven, you won't be required to repay this amount, and it won't be sold or transferred later to a third-party debt collector or debt buyer for collection.

- As required by law, we'll report forgiven debt to the IRS based on the estimates below. These estimates represent the amount of deficiency debt that will be waived upon completion of the short sale and reported to the IRS for each of the listed loans.  This may increase your income taxes and certain tax exemptions might apply.  We encourage you to seek the advice of a tax professional.  You can also find more information at irs.gov.

| | |
|---|---|
| The estimated amount of debt that will be waived on your Bank of America 1st lien loan is: | |
| The estimated amount of debt that will be waived on your Bank of America 2nd lien is: | $239,495.20 |
| The estimated total amount of debt that will be waived and reported to the IRS: | $239,495.20 |

- As permitted by law, we'll report the current status of your loan to the major credit reporting agencies. For more information on credit, please visit ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.

## Next steps

To complete the approval of this short sale offer, please complete the following steps by the stated dates and timeframes.

1. Please read the terms and conditions of the short sale approval carefully.

2. The closing must take place by 03/16/2019.

3. You must provide a copy of this letter to the escrow and/or title agent who is handling the closing on the property as we won't issue any additional statements.

4. If you are currently in bankruptcy or you file bankruptcy prior to closing, you must obtain any required consent or approval of the bankruptcy court and provide it to Bank of America, N.A. no later than three business days before the Closing Date of 03/16/2019.

5. The escrow and/or title agent handling the closing on the property must upload a completed Assignment of Unearned Premium and the enclosed Important Notice Regarding Income Tax Reporting along with the final buyer(s) and seller(s) Closing Disclosure, HUD1 or other settlement statement (collectively "Settlement Statement") to the short sale processing system 72 hours before the closing.  The enclosed Important Notice to You Regarding Income Tax Reporting is to be completed and uploaded along with the final Settlement Statement.

6. A Settlement Statement, signed by you and the buyer at closing, must be provided to the servicer no later than two business days after the Closing Date of 03/16/2019.

7. Prior to releasing any funds to holders of subordinate liens/mortgages, the escrow and/or title agent must obtain a written commitment from the subordinate lien holder that it will release the borrower from all claims and liability relating to the subordinate lien in exchange for receiving the agreed upon payoff amount.

8. The amount of sales proceeds listed in the terms and conditions must be wired and received within two business days after the closing date, 03/16/2019.  If funds are not received within two business days after the closing date, 03/16/2019, this approval is void.  By this date, we must also receive the final Settlement Statement, the full amount of the short sale proceeds specified in the terms and conditions, and the signed Short Sale Affidavit enclosed with this letter.  Please be advised any other form of payment of funds outside of a wire transfer will be returned.  Payoff funds must be received within 2 business days of the closing date.

## Questions

If you have questions about this letter, please call 800.669.6650, Monday through Friday, 8 a.m. to 5 p.m. local time.

## Terms and conditions of the short sale approval

Detailed below are the conditions of this approval. Please read all the information carefully.

**Short Sale Agreement:**

- The sale and closing must comply with all terms and conditions of the short sale agreement between you and Bank of America, N.A., as well as all terms and representations you must provide.
- Any change to the terms and representations contained in this short sale approval or the sales contract between you and the buyer must be approved by the servicer in writing. The servicer is under no obligation to approve such changes.
- If the terms and conditions of the short sale approval are not met, Bank of America, N.A. will cancel the approval of this offer and continue the foreclosure process, if applicable, as permitted by the mortgage documents.

**Property Condition:**  The property is being sold in an "AS IS" condition.  No repairs will be made or be paid out of the proceeds, unless otherwise stated.

**Buyer of the Property:**  This short sale approval is exclusive to the offer from the buyer referenced here: The approved buyer(s) is/are Adam Brunson, and the sales price for the property is $875,000.00.  Another buyer cannot be substituted without the prior written approval of Bank of America, N.A.  Furthermore, the buyer may not alter the capacity in which they will take title. For example, a buyer may not enter into a contract to purchase a property and then amend the contract to purchase the property as trustee for a trust, LLC, or any other legal entity.

**Arm's-Length Transaction.**  The borrower, purchaser, and all parties involved in the transaction must sign and date a Short Sale Affidavit (attached) at the time of the closing confirming that the transaction is an arm's-length transaction with all net proceeds applied to the mortgage loan payoff in full satisfaction of the entire first-lien mortgage debt.  An arm's-length transaction is a transaction between parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise.

**Closing Information:  The closing must take place and the appropriate amount of sales proceeds must be wired and received within two business days after the closing date,** 03/16/2019.  **If funds are not received within two business days after the closing date,** 03/16/2019, **this approval is void.** By this date, we must also receive the final Settlement Statement, all of the other final approved documents, and the full amount of short sale proceeds specified below.

**Closing Costs:**  Closing costs have been negotiated and agreed upon with the authorized agent as of 02/08/19 of Approval.
  a.  Total Closing Costs not to exceed  $875,000.00 of Total Closing Costs.
  b.  Maximum commission paid $43,750.00 of Agent Commission.
  c.  Maximum allowed to the subordinate lien holder $0.00 to pay 2nd liens.
  d.  Maximum allowed for Homeowners Association (HOA) liens $0.00 allowed for HOA liens (if applicable).
  e.  Maximum allowed for repairs $0.00 of Repairs (if applicable).
  f.  Maximum allowed for termite inspection $0.00 for Inspection Related to Termite(if applicable).
  g.  Maximum allowable for termite repairs $0.00 for Repairs Related to Termite (if applicable).

Please be aware Bank of America, N.A. will not cover any additional fees that weren't approved on 02/08/19 of Approval letter and they will become the sole responsibility of the agent, the buyer or the seller to pay at closing. The total closing costs approved is $875,000.00 of Total Closing Costs.

|  | 1st Lien Loan Number | 2nd Lien Loan Number |
|---|---|---|
|  |  | 122046220 |
| **Net Proceeds from Sale** | $0.00 | $8,500.00 |
| **Cash Contribution** | $0.00 | $0.00 |
| **Total Proceeds to Bank of America on Settlement Statement** | $0.00 | $8,500.00 |
| **Promissory Note** | $0.00 | $0.00 |

**Proceeds from Short Sale:**  The sellers won't receive any proceeds from this short sale transaction. If there are any remaining escrow funds or refunds, they will not be returned to the seller; rather, they will be utilized by Bank of America, N.A. toward payment of the outstanding mortgage obligation, as permitted by law.  If the Assignment of Unearned Premium Refund form is enclosed, complete and upload it to the short sale processing system along with the final Settlement Statement.

You won't receive any proceeds from this short sale transaction aside from any relocation assistance, if applicable, outlined in this letter.

**Proceeds from Insurance Claim:**  If the seller is entitled to receive any proceeds based on a claim for damage to the property under any policy of insurance, including homeowner's, lender-placed, casualty, fire, flood, etc., or if seller is entitled to receive other miscellaneous proceeds, as that term is defined in the deed of trust/mortgage (which could include Community Development Block Grant Program (CDBG) funds), these proceeds must be disclosed

before we will consider the request for short sale.  If we receive a check for insurance or miscellaneous proceeds that were not previously disclosed, Bank of America, N.A. will have the right to keep the proceeds and apply them toward the outstanding mortgage debt after the short sale.  Similarly, we would have the right to claim the proceeds to offset our losses if they were not previously disclosed and were sent directly to the borrower.

**Additional Fees:**  We do not charge the borrower for statement, demand, recording, and reconveyance (release of lien) fees on short payoff transactions.  These should not be included in your settlement statement.  We prepare and record our own release of lien.

**Closing Delay and Fees:**  If the closing is delayed and the Investor/Insurer agrees to an extension of the original closing date, to the extent permitted by law, the borrower(s)/seller(s) may be responsible for any daily fees through the new date(s) of closing, extension fees and foreclosure sale postponement fees.  To the extent permitted by law, the borrower(s)/seller(s) will be responsible for any additional costs or fees over the stated approved amounts.

**Subordinate Liens:**  There must not be any liens or claims other than those recognized and accounted for in the Settlement Statement approval, on which this approval is based.  Prior to releasing any funds to holders of subordinate liens/mortgages, the closing agent must obtain a written commitment from the subordinate lien holder that it will release the borrower from all claims and liability relating to the subordinate lien in exchange for receiving the agreed upon payoff amount.  Subordinate lien holders may not require contributions from either the real estate agent or borrower as a condition of releasing the lien and releasing the borrower from personal liability.

**Transfer of Property:**  There are to be no transfers of property within 30 days of the closing of this transaction.  If the escrow and/or title agent handling the closing is aware of any agreement whereby the buyer is to transfer title or possession of the property to any entity, including the borrower or a third party, the closing agent must obtain the prior written approval of Bank of America, N.A.

Bank of America, N.A. requires this short sale transaction transferring ownership to the buyer named herein to be immediately recorded in public record within the applicable county where the property is located on the date which the transaction is consummated.

**Service Transfer of Loan:**  During the short sale process, servicing for this loan may be transferred to a different loan servicer.  Servicing refers to collecting your principal, interest, and escrow payments, if any, as well as sending any monthly or annual statements, tracking account balances, and handling other aspects of your loan.  We may assign, sell, or transfer the servicing of your loan while the loan is outstanding.  You will be given advance notice before a transfer occurs.

**Bankruptcy:**  If you are currently in an active bankruptcy proceeding, please consult with your attorney about how a short sale could affect your mortgage and your bankruptcy case.  If your bankruptcy plan requires you to submit monthly mortgage payments to a Trustee, please note that all funds received from the Trustee during the short sale review, closing, and court approval process will be applied to the outstanding mortgage obligation pursuant to the terms of your bankruptcy plan.  Please also note that any final agreement is contingent upon bankruptcy court approval and may require amendment of your bankruptcy plan.

**Termination of Short Sale Agreement:**  We may terminate this agreement at any time if we have evidence of:

- Any fraud, misrepresentation, and/or material omission;
- A material change to the terms of the short sale transaction or a different buyer; or
- The transaction not complying with our requirements, policies, or procedures.
- Prevention of the transaction: Bank of America, N.A. is committed to taking the strongest action, including criminal referrals, against parties who, by their acts, victimize the selling homeowner, create an increased risk of loss to the bank, compromise federal foreclosure relief programs, or are acting outside their applicable licensing requirements of good, ethical conduct.

**Mortgage Fraud:**  Any party is encouraged to report any suspicious activity on this transaction to Bank of America's mortgage fraud hotline at mortgagefraudhotline@bankofamerica.com.

We strongly discourage you from sending personal information via email unless it is sent through a secure, encrypted method.  Unencrypted emails are at risk of being intercepted or seen by unauthorized parties.  If you would like to send your information to us securely, please call me (or have your attorney call me) at 800.669.6650, Monday through Friday, 8 a.m. to 5 p.m. local time to assist you with this process.  Please note Bank of America, N.A. won't solicit you to send confidential information to us through email.

We will record a lien release once the final transfer of title of the property is completed.  Bank of America, N.A. appreciates your efforts and cooperation in meeting all of the terms and conditions of this approval.  If you feel there is additional information you would like to provide, or if you need additional information, please call or have your attorney call your Customer Relationship Manager at 800.669.6650.  Please continue to work closely with your real estate agent to finalize your short sale.

Written Notices of Error, Requests for Information, and Qualified Written Requests (as defined in RESPA) must be sent to:
Bank of America, N.A.
PO Box 942019
Simi Valley, CA 93094-2019

**MILITARY PERSONNEL/SERVICEMEMBERS:**  If you or your spouse is a member of the military, please contact us immediately.  The federal Servicemembers Civil Relief Act (SCRA) and similar state laws provide significant protections and benefits to eligible military service personnel. However, military service and/or SCRA qualification may not necessarily prevent foreclosure.  If your loan is in default, a court may authorize foreclosure.  If you are having difficulty making your payments, please call us as soon as you can so we can discuss various home retention options.  You can reach our Enterprise Military Benefits Unit at 877.345.0693.  From outside the U.S., please call us at 817.245.4094. Homeowner counseling is also available at agencies such as Military OneSource at militaryonesource.mil or 800.342.9647 and Armed Forces Legal Assistance at legalassistance.law.af.mil, and through HUD-approved housing counseling agencies, which you can find at hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**Trabajemos juntos**
Hay ayuda disponible para los propietarios de habla hispana que tienen dificultades para pagar.  Haremos todo lo posible por encontrar una solucion para ayudarlo.  Si usted tiene alguna pregunta y prefiere recibir asistencia en español, por favor llame al 800.669.6650.

**Important instructions for the seller and agent**

1.  Please complete the enclosed Assignment of Unearned Premium and Important Notice Regarding Income Tax Reporting and provide this information to your closing agent.
2.  **The closing agent must upload a certified copy of the final estimated Settlement Statement, Assignment of Unearned Premium, and Important Notice Regarding Income Tax Reporting to the Short Sale Processing System 72 business hours prior to closing. You cannot close without final approval of the closing costs.**
3.  Payoff funds must be wired (unless otherwise specified) and must be received **within 48 business hours of the Settlement Statement date**, per the instructions below.

> Bank of America, N.A.
> 275 Valencia Avenue
> Brea, CA  92823
> MRC Acct # 12357-47067
> ABA # 0260-0959-3
>
> Reference loan#:   122046220
>                       RONALD & ILINDA CARTER RONALD & LINDA
> CARTER RONALD CARTER LINDA CARTER
> Property Address: 43336 VESTALS PL
> LEESBURG, VA 20176

Please note:  Wire transfers must include the loan number, borrower's name and property address.  **If the funds cannot be properly identified, they will be returned.**

**Important Notice to Seller Regarding Income Tax Reporting**

To provide you with the total interest you paid on your mortgage and/or reported to the IRS at year-end, Bank of America, N.A. will need your new mailing address. Please complete the information below.

122046220

RONALD & ILINDA CARTER
RONALD & LINDA CARTER
RONALD CARTER
LINDA CARTER

**Current Mailing Address:**
43336 VESTALS PL
LANSDOWNE, VA  20176-8418

**New Mailing Address:**
Street:

_____

_____

City: _____ State: _____ Zip: _____
Telephone: ( _____ ) _____ - _____

**Assignment of unearned premium refund**

A short sale was completed on the property: 43336 VESTALS PL LEESBURG, VA 20176. The transaction closed on _____, _____20 _____

I/We, the insured, hereby request cancellation of our hazard insurance (e.g.homeowners, flood, hail, windstorm, etc.) effective on the closing date. Please refund the unearned portion of the premium directly to:

Bank of America, N.A.
TX2-979-01-19
4500 Amon Carter Blvd.
Ft Worth, TX  76155
REFERENCE Account No:
122046220

I/We, the insured, hereby relinquish any claim to these funds.

_____
Borrower Signature                                    Date Signed

_____
Co-Borrower Signature                                 Date Signed

_____
Co-Borrower Signature                                 Date Signed

_____
Co-Borrower Signature                                 Date Signed

# INSTRUCTIONS

## Short Sale Affidavit

The borrower, purchaser, and all parties involved in the transaction must sign and date a Short Sale Affidavit (Form 191) at the time of the closing confirming that the transaction is an arm's-length transaction with all proceeds (net of allowable transaction costs as described in Servicing Guide Announcement SVC-2012-19: Standard Short Sale/HAFA II and Deed-in-Lieu of Foreclosure Requirements) applied to the mortgage loan payoff in full satisfaction of the entire first-lien mortgage debt. An arm's-length transaction is a transaction between parties who are unrelated and unaffiliated by family, marriage, or commercial enterprise. The servicer may allow the borrower, purchaser, and all parties involved to sign individually on separate copies of the short sale affidavit. In addition, the servicer must retain the original signed short sale affidavit(s) in the mortgage loan servicing file.

## SHORT SALE AFFIDAVIT

**Servicer:**                                        **Servicer Loan Number:**

_____         _____

**Address of Property:**

_____

**Date of Purchase Contract:**               **Investor:**

_____ /___ /___                            _____

**Seller:** _____       **Buyer:** _____

**Seller:** _____       **Buyer:** _____

**Seller's Agent/Listing Agent:**       **Buyer's Agent:** _____

_____

**Escrow Closing Agent:**                  **Transaction Facilitator (if applicable):**

_____       _____

This Short Sale Affidavit ("Affidavit") is given by the Seller(s), Buyer(s), Agent(s), and Facilitator to the Servicer and the Investor of the mortgage loan secured by the Property ("Mortgage") in consideration for the mutual and respective benefits to be derived from the short sale of the Property.

NOW, THEREFORE, the Seller(s), Buyer(s), Agent(s), and Facilitator do hereby represent, warrant and agree under the pains and penalties of perjury, to the best of each signatory's knowledge and belief, as follows:

    a)   The sale of the Property is an "arm's length" transaction, between Seller(s) and Buyer(s) who are unrelated and unaffiliated by family, marriage, or commercial enterprise;

    b)   There are no agreements, understandings or contracts between the Seller(s) and Buyer(s) that the Seller(s) will remain in the Property as tenants or later obtain title or ownership of the Property, except that the Sellers(s) are permitted to remain as tenants in the Property for a short term, as is common and customary in the market but no longer than ninety (90) days, in order to facilitate relocation;

    c)   Neither the Sellers(s) nor the Buyer(s) will receive any funds or commissions from the sale of the Property except that the Seller(s) may receive a payment if it is offered by the Servicer, approved by the Investor and, if the payment is made at closing of the short sale of the Property, reflected on the Settlement Statement;

    d)   The Seller's Listing Agent has presented all offers for the purchase of the Property to the Borrower and no offers have been held, concealed or delayed due to action or inaction by any Agent. [1]

    e)   There are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Property that have not been disclosed to the Servicer;

    f)   All amounts to be paid to any person or entity, including holders of other liens on the Property, in connection with the short sale have been disclosed to and approved by the Servicer and will be reflected on the Settlement Statement;

---

[1]   As of August 1, 2014, this attestation is a mandatory requirement as stated in SVC-2014-09: Updates to Short Sale.

g) Each signatory understands, agrees and intends that the Servicer and the Investor are relying upon the statements made in this Affidavit as consideration for the reduction of the payoff amount of the Mortgage and agreement to the sale of the Property;

h) A signatory who makes a negligent or intentional misrepresentation agrees to indemnify the Servicer and the Investor for any and all loss resulting from the misrepresentation including, but not limited to, repayment of the amount of the reduced payoff of the Mortgage;

i) This Affidavit and all representations, warranties and statements made herein will survive the closing of the short sale transaction; and

j) Each signatory understands that a misrepresentation may subject the person making the misrepresentation to civil and/or criminal liability.

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____ ,20 ____ .

(**Seller's Signature**) By: _____

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____ ,20 ____ .

(**Seller's Signature**) By: _____

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____ ,20 ____ .

(**Buyer's Signature**) By: _____

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____ ,20 ____ .

(**Buyer's Signature**) By: _____

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____ ,20 ____ .

(**Seller's Agent/Listing Agent's Signature**) By: _____

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____ ,20 ____ .

(**Escrow Closing Agent's Signature**) By: _____

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____ ,20 ____ .

(**Buyer's Agent's Signature**) By: _____

IN WITNESS WHEREOF, I have subscribed my name this _____ day of _____ ,20 ____ .

(Transaction Facilitator's Signature (if applicable)) By: _____

# EXHIBIT D

# RB   REES BROOME, PC

—ATTORNEYS AT LAW—

1900 Gallows Road, Suite 700
Tysons Corner, Virginia 22182
Phone: (703) 790-1911
Fax: (703) 848-2530
www.reesbroome.com

FOUNDERS
Joel M. Birken
Jonathan J. Broome, Jr.
James M. Rees (1941-1986)

Ruhi F. Mirza                                                                    rmirza@reesbroome.com
Associate
Admitted: VA, MD, DC

February 28, 2019

**VIA EMAIL:  MICHELLE@AMSLAWGROUP.COM**
Michelle J. Adams, Esq.
Adams, Morris & Sessing
12850 Middlebrook Road, Suite 308
Germantown, MD 20874

Re:   43336 Vestals Place
Lansdowne on the Potomac Homeowners Association, Inc.
RB NO: 1269360.001

Dear Michelle:

Pursuant to your request, the Board has agreed to accept $6,000.00 as payment in full of the secured debt associated with this property.  As agreed, $3,500.00 will be paid from the proceeds of the sale and an additional $2,500.00 will be paid by contributions from other parties.

This payoff figure is valid through March 31, 2019.  If settlement is scheduled to occur after that date, you must contact this office for an updated payoff figure.

Upon receipt of payment in full, all recorded liens and judgments will be released and marked as satisfied. Please make all checks payable to Lansdowne on the Potomac Homeowners Association, Inc., and send them to my attention at 1900 Gallows Road, Suite 700, Tysons Corner, Virginia 22182.  Please include the property address and a copy of the settlement sheet with the payment to insure that the payment is properly credited.

Be advised, this balance may not include costs for resale disclosure packages or certificates, transfer fees or other charges related to the sale of the property that may be charged by the Association.  Please contact the Association's management agent directly for further information regarding these charges.

Michelle Adams
February 28, 2019
Page 2

        If you have any questions or require additional information, please do not hesitate to contact
me.

**PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT
COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT, AND ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

            Sincerely,

            REES BROOME, PC

            By: _____
            Ruhi F. Mirza